## O. O. SPRINKLE v. STATE.

No. A-5435.   Opinion Filed May 1, 1926.
(245 Pac. 901)

W. R. Withington, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the county court of

Carter county on a charge of having possession of intoxicating liquor with intent to violate the prohibitory law. The record discloses that on the 25th day of June, 1924, the defendant and two other men were seen near the Confederate Home out of Ardmore. The defendant concealed an armful of bottles near the road. He took a tow sack filled with bottles of "choc" beer, and, when called to by the officers, dropped it and fled. There was testimony that one of the officers had a bottle of the seized liquor analyzed, and it contained 7 per cent. alcohol.

The defendant contends that the search of the sack carried by defendant in which were bottles of beer was illegal; that the officer did not know that defendant had intoxicants in the sack; and that the search was on mere suspicion, citing: Killian v. State, 30 Okla. Cr. 201, 235 P. 625; Keith v. State, 30 Okla. Cr. 168, 235 P. 631; Crossman v. State, 28 Okla. Cr. 198, 230 P. 291; Powell v. State, 32 Okla. Cr. 244, 240 P. 1080; Severns v. State, 31 Okla. Cr. 231, 238 P. 217; Jokosh v. State, 193 N. W. 976, 181 Wis. 160.

The holding as announced in the cases cited may be summarized by saying that the search of the person cannot be made on the mere suspicion that the person is violating the liquor law. The record in this case does not bring it within that rule. A part of the evidence on this point is as follows:

"Q. What did Sprinkle do when you got there? A. He had an armload of bottles, and hid them under a little hickory bush.

"Q. Where did he get them? A. Out of the turtle back of a Studebaker roadster; put the bottles under the bush; got a tow sack, with a bunch of bottles in it; started down the hill west, the tow sack on his shoulder, both hands ahold of it. I hollered at him; he looked back; and run down the hill west.

"Q. What did you do? A. Told Hudson to put the sack in the car. He said it wasn't his. I put it in the car; brought Hudson and Talley back to town.

"Q. Did you see what was in that sack? A. After I got to jail— * * *

"Q. Fact is, you do not know it was beer? A. Could smell it, mighty strong. * * *

"Q. Could you smell it through the tin and glass? A. One of them was broken; saw it whenever I took it out to jail.

"Q. When one of them was broken you could smell something; you could not tell for sure it was choc beer? A. Yes, sir.

"Q. You did not taste it? A. No, sir.

"Q. You could tell by the smell? A. Yes, sir.

"Q. You are just going by the smell? A. Yes, sir."

The witness Dunn testified:

"Q. Tell the court and jury how you came to see him? A. Mr. Hignight and a fellow by the name of Pope and I were out two miles west of here, and on a hill where some bushes were we found some choc beer out there. We backed off from it a little piece, and sat down, and stayed there about 20 minutes. Mr. Sprinkle walked up to it, and we arrested him.

"Q. Did you do anything with the Choctaw beer? A. Arrested him. Him and I drank a bottle of it.

"Q. What was the condition of the choc with reference to being hot or cold? A. Cold; there was cracked ice there.

"Q. Did you know how much Choctaw beer there was there? A. 25 or 30 bottles, maybe more; maybe not that much. * * *

"Q. Did you find any other Choctaw beer or bottles there? A. Yes, sir.

"Q. Where? A. Up the hill.

"Q. Where were they? A. Half gallon white bottle, 40 or 50 steps; half gallon in the road, in the open; several empties in some bushes. * * *"

There is also other evidence along the same line. It appears that, in addition to the beer in the sack, there was beer and ice out in the open with a large number of bottles apparently ready to distribute to the trade. When defendant dropped his sack of choc and fled, he was in no position to complain that the officer then examined the sack and testified to its contents. The liquor discovered itself.

In the case of Munson v. Commonwealth, 256 S. W. 393, 201 Ky. 274, it was said:

"We do not think, under the facts in this case, that a search warrant was necessary to justify the arrest of Perry Munson, who was caught carrying a suitcase filled with liquor, because the liquor discovered itself. The suitcase was wet with it, and gave off odors, indisputable evidence of the liquor it contained. True, the officers had gone to the premises for the purpose of searching the home of Pack Munson, but had not done so; not then having been admitted to the house, when appellant, Perry Munson, sprang from the rear door and ran down through the garden carrying the suitcase. He threw the suitcase away before he was caught. * * * And the officers found it, and discovered that it contained whisky and arrested appellant. The evidence was therefore competent. * * *"

This was a sufficient showing of an offense in the presence of the officers to authorize an arrest and the search. Some claim is also made that there is insufficient identification of the liquor analyzed. We do not agree with this contention. The identification is bungled somewhat, but is sufficient. It is also urged that the punishment is excessive, but the evidence apparently is that defendant was prepared to dispense intoxicants at retail, and the punishment was in the discretion of the jury.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.