## STATE OF WYOMING v. ROY YOUNG
(No. 1558; Oct. 7, 1929; 281 Pac. 17)

For the appellant there was a brief and oral argument by
*H. Glen Kinsley* of Sheridan, Wyoming.

On behalf of the state there was a brief by *William O. Wilson*, Attorney General; *Richard J. Jackson*, Assistant Attorney General, and oral argument by *Mr. Jackson*.

510

512

*H. Glen Kinsley* in reply.

RINER, Justice.

Roy Young was convicted in the District Court of Sheridan County of transporting intoxicating liquor in violation of law. From a judgment of fine and imprisonment, entered upon the verdict of the jury, he has brought the cause here for review by direct appeal. The facts disclosed by the record material to be considered here in connection with the matters argued on behalf of the appellant (hereinafter generally mentioned as the "defendant") are in substance these:

On March 14, 1928, one A. H. Scott and another were engaged in dragging a portion of the Tongue River road north of Sheridan, Wyoming. As a part of their equipment they had a log-chain, valued at three or four dollars, which, as they started to work that morning about eight o'clock, was placed in their wagon. They then drove a short distance to the road, traveling over it about three miles to where they desired to commence their work, left the wagon at the side of the highway, and began the work of dragging it. About ten o'clock that morning they returned to the wagon and found the log-chain to be missing. At that time only one car had passed over the road at the side of which the wagon containing the chain had been left. The car had stopped and then proceeded on its way. This car was a large one, painted green, with two spare tires on the rear

and two men were in it. Scott and his helper looked for the chain along the road they had traversed without finding it. One of the neighbors, a man with a team who passed them that morning before they left the wagon at the roadside, and who traveled about a mile over the road before he turned off, stated to Scott, upon the latter's subsequent inquiry, that he had not seen the chain. As soon as he found the chain missing, Scott phoned the sheriff's office in Sheridan, told of the passing car, described it and the men in it as well as he could, said that he thought that the log-chain had been stolen, and asked that the car be watched for, and that ''they see if they could find the chain.''

No warrant of any kind was issued, but two deputy sheriffs, Morris and McGovern, were instructed by the office deputy, who took the phone call, to go out on the highway to find and stop the described car and search it for the log chain.

The two deputies drove out of Sheridan and presently passed a car with the given description, headed towards that city. The officers went on and as soon as possible turned about and soon overtook the green colored automobile, which had stopped by the roadside. Its occupants were out of the car, engaged in fixing a tire chain, when the officers arrived. The latter immediately interrogated the two men, one of whom was the defendant Young, concerning the missing article, but were told that ''they had come up the Tongue River road and didn't see any log chain and didn't have any log chain.'' Upon the officers requesting permission to search the car for the chain, the defendant refused to allow the search and demanded that they produce a search warrant or other process before he would authorize an examination of its contents.

This auto, used by the defendant, was a Cadillac open, or touring, car, with side curtains on the back, but none over the front doors. Both officers testified that as they approached the car they observed a very strong smell of

whiskey and intoxicating liquor, and could see, under a tarpaulin or some such covering, kegs and containers of various sorts, piled in the back of the car. The under-sheriff, who subsequently examined the auto at the sheriff's office in Sheridan before its contents were removed, stated at the trial on cross-examination by appellant's counsel, that "there was liquor oozing out of the corks in the kegs that weren't in solid; there was whiskey coming from the corks in the kegs. * * * Some of them (the kegs) were rather old and some of them have got rags tied around it to hold the corks in, hold the bung in, and they put the rag around it to hold the liquor in the barrels."

Defendant's refusal to allow the officers to make the search of his vehicle resulted in both men being placed under arrest, and defendant and his companion were, with the car, brought to the sheriff's office in Sheridan. At the time the arrest was made the officers testified they thought that the defendant might have possession of the missing log chain, but he and his companion were not informed "just why they were under arrest," other than the statement of one of the officers that "We are going to take you into town and see whether you have this property we are looking for or not." Upon arrival at the sheriff's office the county attorney of Sheridan county was called and the defendant was asked whether he still insisted on a warrant before the car was searched. To this inquiry the defendant replied, "No, I guess not; you fellows knows what is in it; go ahead and search it." The car was then searched and its contents, consisting of 41 gallons of whiskey and 20 gallons of alcohol, were removed by the officials.

Previous to the trial defendant filed a motion asking that all evidence relating to the liquor thus seized be suppressed. This motion was heard upon oral evidence in open court on behalf of the State and an affidavit of

the defendant, setting out that the seizure of the liquor and arrest of the defendant and his companion were unauthorized, being made without due and proper warrants or authority. The court denied the motion and the trial proceeded. The evidence then offered by the parties was substantially the same as that presented upon the hearing of the motion aforesaid and disclosed the salient facts already recited. The defendant did not testify. At the conclusion of the trial defendant's companion was discharged upon a directed verdict. Defendant's case, however, was submitted to the jury, who found against him.

The controlling question in the case and to which all the argued assignments of error lead, is whether the defendant was, under the facts in the record, lawfully arrested. If he was, then the search for and seizure of the liquor in the Cadillac car and its use as evidence was proper. Wiggin v. State, 28 Wyo. 480, 206 Pac. 373; State v. George, 32 Wyo. 223, 231 Pac. 683; State v. Rotolo, (Wyo.) 270 Pac. 665, and cases therein cited.

For the State, it is argued that the officers were justified in making the arrest by Section 7350, W. C. S. 1920, which provides that:

"Any person not an officer, may, without warrant, arrest any person if a petit larceny or felony has been committed, and there is reasonable ground to believe the person arrested guilty of such offense, and may detain him until a legal warrant can be obtained."

The state of Nebraska has had a similar statute, which has been several times under consideration by the courts of that commonwealth: Simmerman v. State, 16 Nebr. 615, 21 N. W. 387; Kyner v. Laubner, 3 Nebr. Unoff. 370, 91 N. W. 491; Halsey v. Phillips, 104 Nebr. 648, 178 N. W. 218. But we do not find it necessary at this time to examine and determine the effect of this statute, as the facts appearing to the officers at the time of the arrest deter-

mine, as we see the matter, the legal principles applicable here. Where an offense against the laws of the state is being committed in an officer's presence, he may, lawfully, and, indeed, it is his duty to, arrest without a warrant. Section 7349, W. C. S. 1920; State v. George, supra. The more recently decided cases are reasonably clear concerning whether an offense is committed in an officer's presence when circumstances appear such as the case at bar presents. The following citations indicate the current of authority as we find it:

Eady v. State, (Miss.) 121 So. 293, 294, was a case where there was no affidavit or search warrant yet a judgment of conviction was affirmed, the facts and law applicable being set forth in the opinion thus:

"In Hamilton v. State, 149 Miss. 251, 115 So. 427, it was held that, if there is probable cause, or if the officer has reason to believe that intoxicating liquor is being transported, that a search of the vehicle without a warrant is lawful. * * * It appears from the evidence in this case that the officer was in the public highway when he detected the scent of whisky and was not a trespasser in any wise upon the appellants, and that when he came in contact with the appellants he discovered that this scent did not emanate from their bodies, consequently he must locate it elsewhere, if he locates it at all. When he came in contact with the car, but before touching it, or opening the door, he found the scent to be much stronger, thus indicating clearly that the liquor odor was coming from the car. He testified that he was familiar with the scent of whisky, and, taking this in connection with the demeanor of one of the appellants when he mentioned the heaviness of the car, we think was sufficient to make a man reasonably believe that the appellants had whisky in the car. The court below passed upon the sufficiency of the evidence to constitute probable cause, and we are unable to say that the court was not warranted in so finding."

In State v. District Court, 72 Mont. 245, 233 Pac. 126, 129, the facts and conclusion reached in the case are set forth thus:

"We still have proof that, as the officer approached the car in which relator was sitting, and which he thereupon started in motion, the officer saw, in the back seat of the car, two 5-gallon wooden kegs, one 10-gallon wooden keg, and one 5-gallon glass container, and 'detected the odor of moonshine whisky protruding from the car', and, 'acting in good faith, believing that a crime was being committed in his presence,' made the arrest and seizure. Applying the test laid down by this court in the cases heretofore cited, were those facts and circumstances such as to cause a reasonable man, acting in good faith, to believe that a crime was being committed in his presence? We think they were."

Upholding the conviction under facts similar to those in the case last above cited, in Sands v. State, (Okla. Cr.) 252 Pac. 72, the court said, describing the officers' conduct and the legal principles applicable:

"They saw a car drive up in front of the building, and the defendant got out of the car and came into the building, and as the officers went out they passed him. The wife of defendant, jointly charged with him, was sitting at the wheel, and as the officers came out to the car they smelled whisky, and one of them looked through the isinglass of the curtain between the front and rear seats and saw whisky which was contained in two glass jugs, a five-gallon and a one-gallon glass one. They thereupon seized the whisky and arrested the defendant and his wife. Before the trial had begun, defendant filed a motion to suppress the evidence as having been obtained by an unlawful search, which was overruled. It has been held that an officer may be apprised of the commission of a misdemeanor by the sense of smell or hearing, as well as by the sense of sight. Miles v. State, (Okl. Cr. App.) 236 Pac. 907; Sprinkle v. State, (Okl. Cr. App.) 245 Pac. 901; Collins v. State, (Okl. Cr. App.) 237 Pac. 865. See, also, Stansell, et al. v. State, (Okl. Cr. App.) 235 Pac. 937.

"To hold that the looking through the isinglass of the car by the officer after having his attention called to it by the odor of whisky is too narrow and technical a construction of the statute and constitutional provision forbidding unlawful searches. It is not a search for an officer to merely

look into an automobile. The contention upon this point cannot be sustained.''

The Supreme Court of Missouri, in State v. Loftis, 316 Mo. 878, 292 S. W. 29, discussing the authority of a sheriff to search an automobile under the facts there appearing, used this language:

''The offense with which the appellant is charged may be said to have been committed in the presence of the officer, in that, when apprehended, the appellant was in the act of transporting the liquor. This being true, and the smell of liquor permeating the nostrils of the officer when he approached the car, he was not precluded from searching the same without a warrant. Where an officer has reason to believe from the use of his senses that an automobile is being used to transport intoxicating liquors, his seizure and search of same will not be in violation of either the federal or state constitution. State v. Hall, (Mo. Sup.) 278 S. W. 1028; State v. Pigg, 312 Mo. 212, 278 S. W. 1030; in re Mobile, (D. C.) 278 F. 949; Elrod v. Moss, (C. C. A.) 278 F. 123; Lambert v. U. S., (C. C. A.) 282 F. 413.''

To the same effect is the later case from the same court, State v. Connor, 318 Mo. 592, 300 S. W. 685, where the contention of appellant, the facts and law governing the matter, were stated as follows:

''Appellant further contends that the trial court erred in overruling his motion to suppress evidence, which motion asserted that the search of his car and the seizure of the jug of liquor therefrom were in violation of his constitutional rights; the same being done without a search warrant. The record discloses that the proof offered at the hearing on the motion to suppress evidence was substantially the same as the evidence given at the trial of the case on its merits, above recited. That is, that the attention of the deputy sheriff was first attracted by the unusual parking of the car, and then by the odor of whiskey coming from the car; that he first saw the jug, which smelled like whiskey, through an open window of

the car, and later through an open door of the car. He then examined the jug and, finding that it contained whiskey, seized it. Under such circumstances, no search warrant was necessary, because the deputy sheriff had before him ample facts and information upon which to base, not only a conclusion of probable cause, but a well-founded belief that the car contained contraband goods and that a felony had been committed. State v. Padgett, (Mo. Sup.) .289 S. W. loc. cit. 956; Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.''

The United States Circuit Court of Appeals for the 9th Circuit, in Miller v. United States, 9 Fed. (2d) 382, while finding that the affidavit for the search warrant under which the officers acted was defective, yet said:

''The affidavit may be conceded to have been defective. The testimony, however, showed the following facts: When the prohibition agents approached the premises with the search warrant they found the plaintiff in error Miller working in a little yard in front of the door to the basement. He had the basement door open. The agents could distinctly smell the odor from fermenting mash, and could see in the open basement several empty raisin boxes, raisins in boxes, and boxes without any raisins in, half a sack of sugar and a part of another sack of sugar, about 25 or 30 pounds, also a 10-gallon keg of wine in a burlap sack, with about 6 inches of the top of the keg showing. In the basement, when they entered, the officers found several vats with grapes fermenting in them, one 52-gallon barrel, three 5-gallon kegs, and one 10-gallon keg, all full of wine; the kegs being in burlap sacks, so that they could be readily carried, which, said the officers from their experience, was the usual way of carrying kegs containing intoxicating liquor. There could be no question but that the officers had the visible evidence of the commission of a crime in their presence, and they had authority, not only to arrest the person committing the offense, but to take into *custodia legis* the instruments of the crime and other articles which might fairly be introduced in evidence in proof of the commission thereof. Vachina v. United States, (C. C. A.) 283 F. 35; McBride v. United States, (C. C. A.) 284 F. 416; Lambert v. United

States, (C. C. A.) 282 F. 413; Agnello v. United States, (C. C. A.) 290 F. 671.''

In Wilder v. Miller, 190 Wis. 136, 208 N. W. 865, 866, the court, distinguishing the case from others previously decided by it, and urged upon its attention to secure a reversal of the judgment of conviction, declared:

''Here we have the testimony of the officer that he smelled alcohol from the car before he touched it, and the evidence shows that a can of alcohol was leaking from which the smell no doubt came. The officer was therefore by the sense of smell advised that the car contained alcohol. This information constituted reasonable grounds for the search, and distinguishes the case from that of Hoyer v. State, 180 Wis. 407, 193 N. W. 89, 27 A. L. R. 673.''

And the judgment was affirmed.

Spires v. Commonwealth, 207 Ky. 460, 269 S. W. 532, 533, where it was assigned as error that the evidence was incompetent because obtained by an illegal search, the facts were that two officers were sitting in an automobile on a public road at two o'clock in the morning when the appellant and another passed within two or three feet of them on horseback. On the saddle under appellant was a sack upon which the witness saw the outline of glass jars. As the appellant and his companion passed, the officers heard the sound of liquid in a jar and smelled the odor of whiskey. When ordered to halt, appellant sought to escape, but was captured. Appellant was convicted of unlawfully possessing intoxicating liquor. The judgment was upheld and the reviewing court said this:

''That an officer is not limited to information derived through the sense of sight, but may rely and act as well upon information obtained through his other senses, is thoroughly established. As many authorities upon the

subject are cited in the Ingle case, 204 Ky. 518, 264 S. W. 1088, we need not repeat them here.

"A little common sense added to the information conveyed by their senses of sight, smell, and hearing left no room for reasonable doubt by the officers that defendant had whiskey in his possession, and in their presence. Hence the acts of defendant and not of the officers revealed the offense, and this is all the law requires."

Another case decided by the Court of Appeals of Kentucky is likewise instructive; that of Ferrell v. Commonwealth, 204 Ky. 548, 264 S. W. 1078, 1079. There also the judgment of conviction was affirmed and the following excerpt from the opinion furnishes the gist of the decision:

"Appellant now insists that the evidence obtained by the sheriffs against him was incompetent because the sheriffs had no warrant to search his automobile, and he insists that the search was unlawful, for which reason the evidence thus obtained was incompetent against him. This case is very different from most cases where that contention is made. True, there was no search warrant, but none was necessary under the facts in this case. If, however, appellant had not opened the door the sheriff would not have been justified in searching the car without a warrant. But when appellant Ferrell opened the door as the deputy sheriff approached, and inquired if he were a 'hi-jacker,' and thus exposed the kegs in the car, at the same time releasing the odors of liquor therein pent up, it was manifest that a public offense was being committed in the presence of the officers and they and each of them had the right to arrest appellant and his companion for having in possession intoxicating liquors.

"We have several times written, and we regard it as sound, that a search warrant is not necessary where the object sought by the search is visible, open and obvious to anyone within a reasonable distance, employing his eyes. Cole v. Commonwealth, 201 Ky. 543, 257 S. W. 713; Royce v. Commonwealth, 194 Ky. 480, 239 S. W. 795; Scruggs v. Commonwealth, 202 Ky. 781, 261 S. W. 261.

"By the act of appellant Ferrell the door of the car was opened and the car's contents exposed to the sheriff.

He had all the facts at a glance. His eyes saw the kegs and his nose smelt the fumes of liquor; thus he had the whole evidence. A case could hardly be made stronger.''

See also Gordon v. State, (Tex. Cr. App.) 12 S. W. (2d) 804, and State v. Lee, 120 Or. 643, 253 Pac. 533.

In the case at bar the officers noticed a strong odor of whiskey and intoxicating liquor, emanating from the defendant's automobile. Looking into it, they saw kegs and containers of various sorts, partially covered. The liquor, as it subsequently appeared, was oozing out of insecure corks in the kegs. Under the authorities cited hereinabove—and many more to the same effect can be found—and also in our judgment, the officers were in duty bound to arrest the defendant as for a violation of law committed in their presence.

A careful examination of the cases cited in support of this appeal discloses none with facts akin to those now before us.

It is said that the officers intimated that they were making the arrest on account of their belief that the defendant had possession of the missing log chain. But we are unable to see that that fact makes any difference so far as the legality of the arrest in the case at bar is concerned. The rule is that:

''Where a party is apprehended in the commission of an offense, or upon fresh pursuit afterward, notice of the official character of the person making the arrest or of the cause of the arrest is not necessary, because he must know the reason why he is apprehended. Cases are not wanting to support this doctrine.'' People v. Pool, 27 Cal. 572, and cases therein cited.

See also 2 R. C. L. 464, Sec. 22, and cases cited in support of the text; Rutledge v. Rowland, 161 Ala. 114, 49 So. 461; State v. Evans, 161 Mo. 95, 61 S. W. 590, 4 Am. St. Rep. 669, and note, page 696; State v. McAfee, 107

524

N. C. 812, 12 S. E. 435; 10 L. R. A. 607; Wolfe v. State, 19 Ohio St. 248.

The defendant was advised of the official character of the men who arrested him and under the circumstances must be held to know—as he evidently did know—the cause for his detention, which was apparent to all present. If the officers had said nothing as they approached the car, but merely arrested the defendant, he could not have complained of the propriety of their actions. Our conclusion being that the defendant's arrest was legal, and consequently that the subsequent search of the auto was proper, the judgment is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.