## REX MATTHEWS v. STATE.

No. A-9571.  Aug. 25, 1939.

(93 P. 2d 549.)

204

Harry C. Kirkendall, of Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is prosecuted to reverse a judgment of conviction and sentence of confinement in the penitentiary for a term of one year and to pay a fine of $500 and the costs, rendered in pursuance of the verdict of a jury finding appellant guilty of unlawful possession of intoxicating liquors, third offense.

The information in substance charges that on the 10th day of January, 1938, in said county, Rex Matthews did unlawfully and feloniously have possession of twenty-four pints of whisky and six pints of gin, with the unlawful intent to sell the same, and charges three previous convictions in the county court of Garfield county for unlawful possession of intoxicating liquors. The judgment was rendered April 6, 1938.

The conviction was had under that provision of the prohibition enforcement act making the offense a felony where the conviction is for a third or subsequent violation of the provisions of said act, and providing that such defendant "shall be guilty of being 'an habitual violator of the prohibition laws of this state.'" Sec. 2631, St. 1931, 37 Okla. St. Ann. § 14.

The evidence on the part of the state, which is undisputed, shows, or tends to show, that by custom, police patrolmen checked all cars parked on the streets of Enid between the hours of 10 and 11 each night to see if they were locked and to see if there were articles of value in them that might be stolen. In making this check on the date alleged a patrolman found a car parked at 121 East Broadway, in front of the Palace Theater; the car was locked, the officer saw a carton on the floor of the car, labeled "Paul Jones Whisky" and two or three other cartons beside it, and saw a bottle in the car, this officer called another officer and they called two other officers. They each saw the cartons on the floor between the seats of the automobile; a truck was called and the automobile was towed to the police station; there by manipulating a wire they managed to open the car and found four cartons containing liquor. An hour or two later the defendant appeared at the station and claimed the car, but disclaimed ownership of the whisky. He gave the officers the keys to the car; when the trunk was unlocked five or six bottles of "Crab Orchard Whisky" were found, which the defendant stated was his liquor.

Upon the trial, Patrolman O. S. Plummer testified that, with Patrolman Huffman, he was checking the doors to business places and checking cars on East Broadway to see if articles of value had been left in unlocked cars; if there was they would lock them. About 10:45 that night, a Plymouth car was parked facing the curb, in front of 121 East Broadway, and it was locked; that he looked in and saw behind the front seat, on the floor, three whisky cartons, one labeled, "Paul Jones"; a fourth carton was partly covered by a blanket; that he called Officer Huffman on the other side of the street, then they called Officer Roberts. The car was towed to the station; there with a wire they opened the car.

Patrolman Huffman testified that he was making the north side of East Broadway when Officer Plummer sig-

naled him with a flashlight to come across the street; that he looked in the car and saw three silver colored whisky cartons and the corner of another one, they called Officer Roberts, then they took charge of the car and it was towed to the police station.

Patrolman Ted Roberts testified that on the night of January 9, 1938, he was on duty and was called by Officers Plummer and Huffman from his beat to a Plymouth sedan parked at 121 East Broadway, that he looked in and saw three cartons, one labeled "Paul Jones Whisky," and a broken carton, one bottle exposed, labeled "Crab Orchard."

Melvin Smith testified that he was desk sergeant at the police station on night of January 9th, this year; that an automobile was brought there; that he saw some cartons in the car without the aid of a flashlight; that he put a wire through the front ventilator, lifted the handle and unlocked the car door, and found in the car four pints of Paul Jones whisky, three pints of Four Roses and twelve pints of Crab Orchard whisky. The defendant Rex Matthews came to the station shortly after and said that it was his car, but said he did not know there was any whisky in the car. Asked for the keys, he said he would just wait and give them to the chief. After sitting there a while he handed him the keys. Witness then asked him if there was any whisky in the car trunk; first, he said he did not know; then he said, "I will tell you, you will find five or six pints of whisky in the back." That witness could not make the key work to unlock the trunk, Officer Crawford asked him if he could make it work, and Mr. Matthews said he could unlock it. In the trunk they found five pints of Crab Orchard whisky, and six pints of gin, altogether they found 30 pints of liquor in the car.

Page Belcher, court clerk, called as a witness, produced the records proper, including the informations and

judgments rendered on three previous convictions for unlawful possession of intoxicating liquor in the county court of Garfield county, Jere G. Crowley, judge.

At the close of the state's evidence, counsel for defendant moved to strike all the evidence on the ground that the same was procured by an illegal and unreasonable search without a warrant, in violation of defendant's constitutional rights, which was overruled. And interposed a demurrer thereto, and moved the court to direct the jury to return a verdict of not guilty, which was overruled.

The defendant did not take the witness stand in his own behalf and no witness was called on the part of the defense.

Before commencement of the trial, defendant's counsel filed a motion to suppress the evidence for the reason that the same was obtained by an illegal and unreasonable search of the defendant's automobile without a warrant, in violation of his constitutional and statutory rights.

In support of the motion to suppress, three witnesses testified that at request of counsel for defendant they went to 121 East Broadway a few nights back; a Plymouth sedan was there, and they were asked to look into the car to see if they could read the words on a carton on the floor between the seats, which they did. In answer to the question repeated, each said they could not.

The testimony of these witnesses was admitted over the state's objections that the same was incompetent.

Two patrolmen, Roberts and Plummer, who afterwards testified on the trial as witnesses for the state, were also called by defendant.

Ted Roberts testified:

"I was called there by Officers Huffman and Plummer. I do not know whether or not there was a search warrant for that car; after we looked in the windows, it

was taken to the station; I was not there when it was opened. I looked through the car windows and saw these cartons there, I knew there was whisky in them, I could see one bottle back behind the cartons, I could read the words, 'Paul Jones' on one of the cartons."

Patrolman Plummer testified:

"A Plymouth sedan was parked in front of 121 East Broadway around 11 to 11:15 that night, I did not have a search warrant when I looked into the car. We had the car pulled to the station with a wrecker. There we opened the car with a piece of wire, and found some packages on the floor between the seats, and they contained whisky. When I saw the packages there I called the other officers. I could not tell whether they were full or empty packages."

The prosecution admitted that the search was made without a search warrant and without a warrant for the arrest of the defendant.

The motion to suppress was overruled.

In support of the contention that the state's evidence was inadmissible, the constitutional provisions relied on are as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided." Const. art. 2, sec. 21, Okla. St. Ann.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated." Const. art. 2, sec. 30.

Section 21 corresponds in substance with article V, and sec. 30 is identical with article IV, respectively, of the Amendments to the Constitution of the United States, U.S.C.A.

Provisions substantially the same as the quoted provisions of our Constitution are found in the Constitutions of all the states. The state courts, generally, construe the

provisions of section 30, as forbidding search without a warrant, except when made as an incident to a lawful arrest. A person lawfully arrested may as an incident thereto be searched, and articles found in his possession, which are the subject of crime, or the means of committing it, or which may be of use as evidence at the trial, or which may be used in committing violence or in effecting an escape, may be seized. 2 R.C.L. 467; 5 C. J. 434. Keith v. State, 30 Okla. Cr. 168, 235 P. 631.

The Code of Criminal Procedure provides:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence." Sec. 2780, Sts. 1931, 22 Okla. St. Ann. § 196.

Section 2640 of the Prohibition Enforcement Act, 37 Okla. St. Ann. § 89, provides in part:

"When a violation of any provision of this chapter, shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging, so unlawfully used. * * *"

Provision is also made for the seizure of all evidence of the commission of such violation, including automobiles and other vehicles.

Counsel for defendant in the brief says:

"It is evident that the court erred in overruling the motion to suppress, that in the case of Strategier v. State, 56 Okla. Cr. 11, 32 P. 2d 1054, the facts were that the officer pulled up to the side of the car, and the defendant was out of the car and the door was open, and the officer could see a jar on the floor of the car.

"In the case at bar the officers testified they did not know there was whisky in the car until the car was opened at the police station."

In the Strategier Case this court held:

"A peace officer without a warrant may arrest a person for any violation of the prohibitory laws committed in his presence, and may seize any intoxicating liquor in the possession or immediate presence of the person arrested."

In the opinion it is said:

"In Sands v. State, 36 Okla. Cr. 55, 252 P. 72, the identical question involved in this case was considered by this court, and in the second paragraph of the syllabus the court said: 'The mere looking into an automobile and there seeing intoxicating liquor, which is not concealed, and which requires no search to discover, is not an illegal search within the meaning of the law and Constitution making illegal a search without a valid search warrant.' Miles v. State, 31 Okla. Cr. 4, 236 P. 907; Sprinkle v. State, 34 Okla. Cr. 161, 245 P. 901; Collins v. State, 31 Okla. Cr. 187, 237 P. 865; Stansell v. State, 30 Okla. Cr. 265, 235 P. 937.

"In Bullington v. State, 38 Okla. Cr. 214, 259 P. 876, 877, this court said: 'A peace officer, without a warrant, may arrest a person for any violation of the prohibitory liquor law committed in his presence and may seize any intoxicating liquor in the possession or immediate presence of the person arrested."

In the case of Miles v. State, 31 Okla. Cr. 4, 236 P. 907, this court held:

"An offense is committed or attempted 'in the presence of an officer,' within the meaning of the law, where such officer is apprised by any of his senses that a misdemeanor is being committed or attempted, or by information of such fact communicated by the person arrested prior to his arrest."

In the case of Washington v. State, 37 Okla. Cr. 415, 259 P. 150, this court held:

"A search for intoxicating liquors without a search warrant is not 'unreasonable,' within the meaning of the Constitution, where it is made by officers, who, before entering the premises, could smell mash cooking, which

they knew by their sense of smell was whisky mash, and where they observed a person moving around with a flash light where a still was in operation."

In the case of Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 74 A.L.R. 1407, the Supreme Court of the United States held:

"Search of an automobile without warrant for liquor illegally transported or possessed is not prohibited by the 4th Amendment to the Federal Constitution if the search is upon probable cause; and arrest for the transportation or possession need not precede the search."

In the case of People v. Case, 220 Mich. 379, 190 N. W. 289, 27 A.L.R. 686, the Supreme Court of Michigan held:

"There is no violation of the constitutional provision against search and seizure by the search, without warrant, of an automobile standing on a public fairground, and seizure of contraband goods in it evidencing that a crime is being committed."

In the opinion it is said:

"Our Constitution contains both a provision against intoxicating liquor and against unreasonable search and seizure. Every constitutional provision, as well as statutory, should be construed where possible to give effect to every other constitutional provision in the instrument. Neither our state nor the federal Constitution directly prohibits search and seizure without a warrant, as is sometimes asserted. Only 'unreasonable' search and seizure is forbidden. They are substantially the same upon that subject. * * *

"The generally recognized rule is fairly stated in the following annotation to 11 Fed. Stat. Ann. 354: 'The question whether a seizure or a search is unreasonable in the language of the Constitution is a judicial and not a legislative question; but in determining whether a seizure is or is not unreasonable, all of the circumstances under which it is made must be looked to.'

"The automobile is a swift and powerful vehicle of recent development, which has multiplied by quantity

production and taken possession of our highways in battalions, until the slower, animal-drawn vehicles, with their easily noted individuality, are rare. Constructed as covered vehicles to standard form in immense quantities, and with a capacity for speed rivaling express trains, they furnish for successful commission of crime a disguising means of silent approach and swift escape unknown in the history of the world before their advent. The question of their police control and reasonable search on highways or other public places is a serious. question far deeper and broader than their use in so-called 'bootlegging' or 'rum running,' which in itself is no small matter. While a possession in the sense of private ownership, they are but a vehicle constructed for travel and transportation on highways. Their active use is not in homes nor on private premises, the privacy of which the law especially guards from search and seizure without process. The baffling extent to which they are successfully utilized to facilitate commission of crime of all degrees, from those against morality, chastity, and decency to robbery, rape, burglary, and murder, is a matter of common knowledge. Upon that problem a condition and not a theory confronts proper administration of our criminal laws. Whether search of and seizure from an automobile upon a highway or other public place without a search warrant is unreasonable is in its final analysis to be determined as a judicial question in view of all the circumstances under which it is made."

In the case at bar, the undisputed facts and circumstances as testified to by the officers were sufficient to warrant them in believing that intoxicating liquor was in the cartons and bottle lying on the floor of the automobile, and this was a sufficient showing of an offense committed in the presence of the officers, and the defendant admitted, while their investigation was in progress, that the trunk on the car contained whisky that belonged to him. The admissions against interest made by the defendant were conclusive as to his guilt of the offense charged.

In view of the time, place, and all the circumstances under which this seizure was made, we are of the opin-

ion there was no violation of the constitutional provision forbidding unreasonable searches and seizures.

The trial was exceptionally free from error. The instructions correctly covered the law of the case, and from all the record discloses, the defendant had a fair trial and was properly convicted.

It follows from what has been said that the judgment and sentence of the trial court should be affirmed. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.