# LLOYD TAYLOR v. STATE.

No. A-11012.   July 6, 1949.

(208 P. 2d 185.)

Welch, Bounds & Kile, of Hugo, and R. O. Swimmer, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The defendant, Lloyd Taylor, was charged, tried and convicted in the county court of Choctaw county, Okla., of the offense of unlawful transporting of liquor, 24 cases of whisky, and sentenced to serve

30 days in the county jail and to pay a fine of $200. The offense was allegedly committed on September 5, 1947, by transporting said whisky from a point unknown to a point two miles east of Boswell, Okla., on U. S. Highway 70. The defendant filed a motion to suppress the evidence, which was overruled. The principal contention of the defendant was that the search and seizure of the automobile containing the liquor was illegal and the evidence therefore inadmissible.

The record discloses that Highway Patrolman Cecil Snapp had observed the automobile used in the transportation shortly prior to September 5, 1947, on the highways of Choctaw county and saw that it was equipped with two tail exhaust pipes, window awnings and various other contraptions, and black car, that at that time it had an Oklahoma license tag on it. But, on September 5, 1947, when he saw the automobile driving on the highway a mile west of Hugo, Okla., and a man and woman in it, it had a Louisiana tag on it, which aroused his suspicion and he turned and started pursuing it and never did catch up with it, and it got away. The defendant makes much of the fact of this part of the testimony of Highway Patrolman Cecil Snapp in an effort to establish the proposition that the search and seizure was founded upon mere suspicion. But so far as this evidence is concerned it offers absolutely no basis whatsoever for the subsequent search, and for the purpose of this opinion it forms no essential part of the case leading up to the search and seizure. It is merely corroborative of facts developed during the search.

The record further discloses that thereafter Henry Caldwell, city marshal and deputy sheriff, at Boswell, Okla., was approached by a boy and two girls, while he was attending a night picture show. One of the girls

was a Mrs. Vaughn's daughter, who informed him that at the home of Mrs. Vaughn located two miles east of Boswell there was a stranger's automobile, that contained whisky, parked back of the house. Thereupon, he went to Vaughn's premises and found the automobile parked as he had been informed. He approached the automobile and flashed his flashlight through the left front door of the club coupe and the back seat was raised up and he could see that it contained lugs of whisky, and one of the lugs being torn exposed a bottle containing whisky. Thereafter he contacted Cecil Snapp and Ed Vandergrift, highway patrolmen, and Joe Rowton, constable of Hunter township, who came to the Vaughn's premises and together they searched the automobile based upon what he had seen with the aid of his flashlight. Therein they found 24 cases of whisky, advertising cards bearing a schedule of prices for whisky, and the Oklahoma license tag that Cecil Snapp had seen on the automobile prior to the time that he chased the occupants of the car which then bore a Louisana license tag. The evidence discloses that they took the liquor thus found to the sheriff's vault and impounded the car in a garage in Hugo.

The record further discloses that nine days later the defendant Lloyd Taylor had a conversation with Cecil Snapp in which conversation defendant admitted to Snapp that he was driving the car, and the whisky belonged to him, and that after they abandoned the automobile behind Vaughn's house defendant and his wife walked along the highway as the patrol car passed them. The defendant did not testify in his own behalf, but his wife Bettie Jean Taylor testified that she and her husband had made a trip to Shrevesport, La., and there they bought approximately 25 cases of whisky. She said that they were

transporting the same through Choctaw county, and that something happened to the car and the pressure fell and the car got cold and finally it would not go and they pulled it out into the Vaughn's farm yard back of the house. Thereafter, they left and started walking up the highway, caught a ride and went into the town of Boswell and then caught another ride and went into Durant, caught the bus and went into Oklahoma City. She said the reason they did not stay with the car was because they didn't have any money to have it fixed and were going to Oklahoma City to get the money to try to get it pulled in or fixed, that they were "also kind of leary" because the car had whisky in it. On cross-examination she admitted that her husband's business was the whisky business. It is apparent that the state's evidence was entirely sufficient to make out the charge as laid in the information of unlawful transportation of liquor as against a demurrer. The defendant did not testify but his wife did for him. Her testimony is tantamount to a plea of guilty for him to the charge as laid in the information. It corroborates Snapp's testimony in relation to the admissions the defendant made to him nine days after the offense was committed, to the effect the car was driven by him and the whisky belonged to him. The evidence of his guilt is complete.

In regard to the court's failure to sustain the motion to suppress, it is apparent that the pursuit by Patrolman Cecil Snapp forms no basis whatsoever for the contention that the search and seizure of the liquor in the automobile was based upon suspicion. It forms a separate and distinct transaction from the facts surrounding the search and seizure. It is apparent that Mrs. Vaughn's daughter, on whose private premises the automobile was parked, had seen and observed the whisky

contained in the car and that she reported it to Officer Caldwell for the purpose of having it removed. It is clear that Officer Caldwell came upon the private premises of the Vaughns at their request and invitation. It is further clear that Officer Caldwell discovered that the whisky was in the automobile by the aid of his flashlight and his sense of sight before any search of the same was commenced. Under such conditions this court has repeatedly held that whether a search of an automobile without a warrant is unreasonable is a judicial question to be determined in view of all the facts and circumstances under which it is made. Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549; Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716. Moreover, this court on numerous occasions had passed upon the question of the search of automobiles without a search warrant, where as here such automobile is being used in transporting intoxicating liquor in violation of law, and wherein the liquor can be discovered by means of the sense of sight and without the aid of a search warrant. One of the early cases involving such a situation is Sands v. State, 36 Okla. Cr. 55, 252 P. 72, wherein the court said:

"The mere looking into an automobile and there seeing intoxicating liquor, which is not concealed, and which requires no search to discover, is not an illegal search within the meaning of the law and Constitution making illegal a search without a valid search warrant."

For other cases in point, see also Matthews v. State, supra; Davenport v. State, 71 Okla. Cr. 91, 109 P. 2d 549; and Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366, 367, wherein the court said:

"An offense is committed or attempted 'in the presence of an officer', within meaning of the statute providing that a peace officer may, without a warrant, arrest

a person for a public offense, committed or attempted in his presence, where such officer is apprised by any of his senses that a misdemeanor is being committed by the person arrested prior to the arrest."

In Matthews v. State, supra, the officers looked through the car window of the automobile, therein involved, and saw a carton on the floor of the car labeled Paul Jones whisky, and also saw a bottle in the car. Further in Nott v. State, supra, the court said:

"The constitutional provision against unreasonable searches and seizures does not preclude the making of a seizure, without a warrant previously procured, of intoxicating liquor, where there is no need of a search for the liquor because the liquor is fully disclosed to the eye."

Such is the situation involved in the case at bar. The officer by aid of his search light could detect the presence of whisky in the automobile without ever undertaking to make a search. When he did detect the whisky in the automobile, it was then his duty as such officer to search the automobile, impound it and seize the liquor.

The defendant cites in support of his theory of the case the cases of Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172; Morris v. State, 66 Okla. Cr. 358, 92 P. 2d 603; Barnett v. State, 71 Okla. Cr. 118, 109 P. 2d 243; O'Dell v. State, 80 Okla. Cr. 194, 158 P. 2d 180; Evans v. State, 71 Okla. Cr. 239, 110 P. 2d 521; Rausch v. State, 75 Okla. Cr. 310, 131 P. 2d 133. These cases are not in point with the situation at bar. They are cases that involve a search and seizure predicated entirely upon suspicion which led to the discovery of liquor. Those cases involved searches unlawful from the beginning, while in the case at bar, the discovery of the liquor was made through the sense of sight before the search was undertaken. Therein lies

the distinction between the cases relied upon by the defendant and those relied upon by the state. The defendant has failed to sustain the burden of showing that the search and seizure in the case at bar was unlawful. The court correctly ruled, in refusing to sustain the motion to suppress the evidence.

Next the defendant contends that he was prejudiced by irrelevant and incompetent questions propounded to his wife Bettie Jean Taylor on the cross-examination of her relative to whether or not she and her husband had been divorced. Such examination was irrelevant and incompetent, but since the answer was in the negative, and to the effect that they had never even been separated, the same certainly could not be prejudicial.

Further he contends that the county attorney committed prejudicial error in said examination where in the presence of the jury he asked "Where is that 'rap sheet', I thought I had it right here"; and then in asking Mrs. Taylor "How many times has Mr. Taylor been arrested for selling intoxicating liquor * * *?" This was certainly prejudicial to the defendant, particularly in view of the fact that the defendant had not taken the witness stand in his own behalf and his character and reputation was not in issue. As was said in Kirk v. State, 11 Okla. Cr. 203, 145 P. 307:

" 'It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character.' "

Such was the holding in Smith v. State, 75 Okla. Cr. 55, 128 P. 2d 250; Pitcher v. State, 32 Okla. Cr. 322, 241 P. 199, and numerous other cases. The trial court should have sustained the objection to the foregoing evidence and admonished the jury, but it did not do so.

However, a review of the entire record convinces us that the jury was clearly justified in finding the defendant guilty, and when weighed in light of the re-direct examination of Mrs. Taylor by the defendant's own counsel wherein she was asked what was "her husband's occupation at this time", her answer was "whisky business", we believe that the cross-examination by the county attorney, while improper, would not warrant a reversal of this case on that ground. Such is the case, particularly in view of the fact that the evidence of the defendant's guilt is so clear and convincing, even in light of his wife's testimony offered in his behalf. Here the error complained of certainly did not result in a miscarriage of justice. At most it was technical and harmless, and not grounds for reversal. Title 22 O.S.A. 1941 § 1068.

Finally, the defendant complains of instruction 2D. It is contended that said instruction was misleading. Instruction 2D must be construed in light of all the instructions. Burroughs v. State, 80 Okla. Cr. 271, 158 P. 2d 723. We have examined the instructions as a whole and while they are far from being model instructions, we find that they state the law, and that instruction 2D in light of all the instructions could not have been misconstrued or misinterpreted in the manner contended for by the defendant. Instruction 2D was most poorly worded, but under the conditions herewith presented, in the absence of being misleading to the jury, it does not constitute reversible error. Burroughs v. State, supra. Under these conditions the objection to the instruction is without merit. Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 700. Moreover, in Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144, 146, in syllabus 9 it was held:

"Where the guilt of the defendant is conclusive, instructions which are substantially correct and which do

not apparently serve to mislead the jury will not be grounds for reversal, although such instructions may have technical flaws in them."

We are convinced a re-trial of this case would only result in another jury finding the defendant guilty and that the errors complained of did not affect the results of such finding. They may, however, have influenced the jury in assessing the penalty and provoked it to impose a more severe sentence than would have otherwise been returned. In view of this fact and under the provisions of Title 22 O.S.A. 1941 § 1066, we are of the opinion that the judgment and sentence herein imposed should be and accordingly is modified to 30 days in jail and $100 fine, and as so modified is affirmed.

JONES, P. J., concurs.