Robert George PETERSON, Plaintiff In Error,

v.

STATE of Oklahoma, Defendant In Error.

No. A–12093.

Criminal Court of Appeals of Oklahoma.

Feb. 2, 1955.

Rehearing Denied March 2, 1955.

Shelton Skinner, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

The defendant, Robert George Peterson, was charged by an information filed in the County Court of Pottawatomie County with the unlawful transportation of whiskey, was tried, convicted, and pursuant to the verdict of the jury, was sentenced to serve 5 months in the county jail and pay a fine of $500 and has appealed.

The only proposition presented in the brief of the accused is the contention that the trial court erred in overruling the motion to suppress evidence filed and presented by the accused prior to the commencement of the trial. In response to that contention the State in the answer brief makes two contentions:

1. The automobile being driven by the accused did not belong to him and therefore he cannot question the legality of the search.

2. The seizure of the whiskey followed a lawful arrest of the accused

and the observation of whiskey in the automobile without a search having to be made for it.

There is some merit to the contention of counsel for the State that the accused is in no position to complain of the legality of the search for the reason that the automobile did not belong to him. Defendant admitted in his testimony that the panel truck being driven by him at the time he was stopped by the highway patrolmen had formerly belonged to him but that he had transferred the title to Norton Brothers in a trade for a new car about two weeks before the date of the alleged violation of the law herein involved, but he stated that Norton Brothers had loaned the car back to him for his use pending the arrival of the new automobile which he had ordered. Assuming without deciding that the accused had sufficient proprietary interest in the automobile to question the validity of the search, we shall proceed to determine the other question herein involved as to the validity of the seizure of the whiskey. Reece v. State, Okl.Cr., 259 P.2d 336.

The arrest of accused and seizure of the whiskey occurred on December 31, 1953. Peterson testified at the hearing on the motion to suppress that he had been quail hunting on that day and that he had his two bird dogs and shotgun in the car with him; that he was driving a panel truck with a window in the rear about 10 inches wide and 30 inches long. A picture of the panel truck was identified and admitted as evidence. It showed that the truck was completely enclosed without windows except a small window at the top of the car on the rear of the truck. Defendant testified that he was driving on the highway between Dale and McLoud about 50 miles per hour when the highway patrolmen came up behind his automobile and flashed their warning light which caused him to pull off the road and stop. That the patrol car stopped about 30 feet back of his car and that he left the car which he had been driving and walked back and met the highway patrolmen about 3 or 4 feet in front of the highway patrol car. That Trooper Taylor said, "Bob, I am going to have to give you a summons for speeding." That he got in the patrol car at the command of Taylor and saw Patrolman Morris go to the rear of the panel truck and flash his light in it which caused his bird dogs to jump around excitedly on the inside of the truck. That he could see the bird dogs jumping up against the rear window. That after Morris flashed his light in the rear of the truck, Peterson saw Morris go to the door of the truck, push the seat forward, raise the blanket, turn toward the patrol car and flash his light on and off. That when Morris flashed his light on and off, Patrolman Taylor asked him, "How much whiskey do you have?" and he answered, "I don't know." That Morris then drove the panel truck to the courthouse and Peterson rode with Taylor; that he helped unload the whiskey at the courthouse.

Patrolman Nat Taylor testified at the hearing on the motion to suppress evidence but Patrolman C. A. Morris did not testify at that hearing but Morris did testify at the trial of the case. Taylor testified that he and Morris were patrolling the road between Dale and Shawnee proceeding in an easterly direction about 7:30 P.M. when a panel truck passed them going at what they thought was an excessive rate of speed; that they immediately turned around and started in pursuit of the truck; that they came upon it near the town of Dale when the truck was forced to slow down because of a large transport truck in front of it. That the panel truck pulled around the transport and was followed by the patrol car; that they followed the panel truck about a mile and a half on the highway from Dale and clocked the speed of the truck during that time at 80 miles per hour. After becoming firmly convinced that the defendant was far exceeding the speed limit, the troopers pulled alongside of the truck and turned on their spot light which caused the defendant to pull his car off the road and come to a stop. That the patrol car stopped immediately behind the truck about 10 or 12 feet from it; that Peterson got out of the truck and met the troopers about halfway between the two automobiles. That the highway patrolmen did not know who was driving the automobile at the time they commenced pursuit of it, but when they saw Peterson, they recog-

nized him as they were acquainted with him. That Taylor said to Peterson, "I have to arrest you for speeding," and directed Peterson to get in the patrol car. Taylor testified that he saw Trooper Morris flash his light and look in the rear window of the truck and then immediately walk around to the opposite side of the truck and open the door. That Morris then came back to the patrol car and said, "He has got a load of whiskey, we will have to take him and the truck in; you take him in the patrol car and I will drive his car." That he then inquired of Peterson as to whether he had some whiskey and Peterson said, "I have just got a little bit." That when they arrived at the courthouse, he saw the whiskey for the first time. The bottles were wrapped in paper lugs against the back of the panel truck and were not covered by blankets. Some of the packages were broken. There were 216 pints and 6 fifths of whiskey in the panel truck.

The State's case in connection with the hearing on the motion to suppress evidence would have been materially strengthened if Patrolman Morris had been called as a witness because he testified at the trial that after the defendant had been arrested he (Morris) went to the rear of the panel truck and flashed his light into the truck and saw the whiskey exposed to the eye; that there were some blankets in the back, but they had been moved off of the whiskey; that he walked around to the door of the truck, opened it but did not push the seat forward and raise a blanket as testified to by the defendant, but did look inside and saw exposed to his view a huge quantity of whiskey. He recognized the writing on some of the lugs such as Haig & Haig indicating the brand of whiskey.

The defendant's contention may be considered under two headings. First, the arrest was a mere subterfuge as defendant was violating no law in the presence of the officers which justified his arrest and therefore the search was unlawful. Second, assuming that the arrest was lawful for speeding, the officers were limited in their right to search for a violation of the traffic regulations to a search for weapons only and that in this case since the officers recog-

nized and knew the defendant and had him in custody in the patrol car, they were not legally justified in searching the Peterson car at all because they were not afraid in his case that he would escape or make an assault upon the officers. The testimony by the accused would substantiate the contention that accused was not speeding at the time he was stopped by the officers and that the arrest was a mere subterfuge but the testimony of Patrolman Taylor effectively refutes this evidence. If the trial court gave credence to Taylor's testimony, the patrolmen did not even know who was driving the panel truck until after they had stopped the truck. And furthermore the truck was proceeding down the highway at a speed exceeding the speed limit by more than 25 miles per hour.

 When the trial court overruled the motion to suppress evidence, it necessarily involved a finding on the part of the court that the testimony of the trooper was true and the testimony of the accused was false. That is one of the functions of the trial court, to determine conflicts in the evidence. It is well established that the finding of a trial court at a hearing on motion to suppress evidence will be sustained where there is competent evidence in the record to sustain the finding. Armstrong v. State, Okl.Cr., 266 P.2d 488; Chaney v. State, Okl.Cr., 233 P.2d 314.

The most serious part of the proposition presented by the accused concerns the question as to whether a search was made of the panel truck and if so, whether such search was made incidental to a lawful arrest or pursuant to the discovery of contraband at a place where the officers had a right to be after a lawful arrest had been made.

 Counsel cite and rely upon Brinegar v. State, Okl.Cr., 262 P.2d 464, 466, wherein this court held:

"An arresting officer in determining what is to be searched for should consider the nature of the accusation; the search is then limited to evidence to support the crime charged or to be charged. But where contraband is discovered incidental to such search, it would be the duty of the officer to take and hold the

same to be disposed of as the court would direct.

"Officers are not justified after a valid arrest of motorist for minor traffic violation, in searching his person or his immediate presence, such as the seats and glove compartment of his car, excepting in cases where the officers have reasonable grounds for such action, the seats and glove compartment of the car may be searched for firearms, and this only as a precaution for the safety of the arresting officer and to prevent escape, when done in good faith.

"The cardinal proposition for consideration in the determination of the lawfulness of a search of a motorist, after arrest for a minor traffic violation, such as may be found in some of the provisions of the Uniform Traffic Code, Tit. 47 O.S.1951, §§ 121.1–121.13, or municipal ordinances covering traffic, is *was it reasonable?* And this is a judicial question to be determined in each case in view of all the facts and circumstances under which the search and seizure was made."

The opinion in the Brinegar case was well considered and we adhere to the principles of law therein enunciated. If Peterson had been driving an automobile with an enclosed trunk and the officers had taken a key from him and unlocked the trunk in their quest for intoxicating liquor, the search would have been invalid under the authority of the Brinegar case, but here, if the testimony of the patrolmen is true, no search was made. The officers had stopped the accused, made a lawful arrest and while writing out a citation or summons for his appearance to answer a charge of speeding, the other trooper discovered the whiskey by looking inside of the panel truck. We simply do not place any credence in the testimony of the accused that he saw Patrolman Morris open the door, reach into the truck and raise the blanket before he could see the whiskey, for the reason that as Patrolman Taylor testified, it would have been impossible on account of the enclosed panel truck to have seen what anybody was doing inside of the truck from where Taylor and Peterson were sitting. Under Taylor's testimony, Morris looked in the rear window, then walked to the door, opened it and then immediately walked back to the patrol car and stated that the accused had a truck full of whiskey and the accused at that time admitted he had whiskey. There was no necessity of a search for whiskey as it was exposed to the eye. If the bottles were not in view, as is insisted by counsel for the accused, the admission by the defendant that the packages contained whiskey was sufficient to justify the officers in taking the truck and whiskey to the courthouse and there making a further examination of the lugs to see what they contained. This court has many times held that where officers are in a place where they have a right to be and see a violation of the intoxicating liquor laws, they have not only the right but the duty to search the automobile and confiscate the liquor. Sands v. State, 36 Okl.Cr. 55, 252 P. 72; Matthews v. State, 67 Okl.Cr. 203, 93 P.2d 549; Nott v. State, 70 Okl.Cr. 432, 107 P.2d 366; Davenport v. State, 71 Okl.Cr. 91, 108 P.2d 549; Farmer v. State, 86 Okl.Cr. 308, 192 P.2d 716; Taylor v. State, 89 Okl.Cr. 370, 208 P.2d 185. In the latter case, the facts were substantially the same as in the instant case as therein the officers while lawfully on the premises of a third party flashed their light through the window of defendant's car and saw whiskey. They then searched the automobile and the validity of the search was upheld on appeal.

It is our conclusion that the arrest of the accused was lawful; that after the lawful arrest Patrolman Morris perceived an additional crime being committed by the accused when he saw the whiskey exposed to view in the truck and that he was then legally justified in seizing the intoxicating liquor and the testimony concerning such seizure was admissible as evidence against the accused on the trial. The judgment and sentence of the County Court of Pottawatomie County is affirmed.

BRETT and POWELL, JJ., concur.