*STATE v. WYATT McK. McKINSEY.

*Murder—Evidence—Judge's Charge.*

On the trial of an indictment for murder, where the homicide occurred
at the house of one C, the state offered in evidence the declarations of
the prisoner " that he had killed him (the deceased) in self-defence;
that he had got a gun at one F's and shot him at C's," &c., and also,
"that he had shot him through and through and had cut his way out;
that G (the deceased) and his crowd had waylaid him on the road near
Y's, and he had cut his way out;" *Held*, to be error to charge the
jury "that there was no evidence that the deceased and others were
banded together at C's for the purpose of taking the life of the de-
ceased."

(*State* v. *Allen*, 3 Jones, 257; *Wells* v. *Clements, Ibid.*, 168; *Wittkowsky*
v. *Wasson*, 71 N. C., 451, cited and approved.)

INDICTMENT for Murder tried at Fall Term, 1878, of ROCK-
INGHAM Superior Court, before *Kerr, J.*

The prisoner was charged with the murder of one George
Goode.

The details of the homicide and the attending circum-
stances were testified to by several witnesses who were pres-
ent at the time when it was committed. Their testimony
was in substance that the deceased was sitting at the supper
table at the house of one Jane Crutchfield on the night of
the last day of September, 1877, with his back towards the
south door of the room, when the prisoner made his appear-
ance at that door with a gun in his hands and called out,
" George Goode, damn you, say your prayers, I am going to
kill you," and immediately discharged his gun. As the
prisoner uttered the words, the deceased sprang up and was
making his escape from the room at the north door as
the gun was fired. The prisoner rushed through the room

* Dillard, J., did not sit on the hearing of this case.

in pursuit with a large sword in his hand exclaiming, " O damn you, I'll get you," and as soon as he had passed out, several distinct blows were heard and the prisoner said : " I have killed him. and there is another I am going to put in the same fix."

The deceased was shot through the body and wounded with cuts on the head, from the effects of which he died early the next day. There was much evidence offered of previous difficulties between the parties and of threats uttered by the prisoner against the life of the deceased, which in the view we take of the case need not be further noticed.

James P. Dalton, introduced for the state, testified that on the 2nd day of October, after the homicide, the prisoner came to his house and on being asked his name and if he was the person who killed George Goode, said in reply, that he was. On being questioned about the matter, the prisoner said further, " that he killed him in self-defence ; that he got a gun at one Fulps, and shot him at Crutchfield's, and did not know that he had hit him, and then pursued him and hit him several licks with a sword."

Another witness examined for the state, J. H. Clark, testified that the prisoner came to his house late on the night of the homicide and said " he had shot George Goode through and through with a rifle, and had cut his way out; that George Goode and his crowd had way-laid him on the road near George Young's. and he had cut his way out."

This evidence was brought out by the state, the defendant introducing no testimony. There was a verdict of guilty, judgment, appeal by prisoner.

*Attorney General,* for the state.
*Mr. Thomas Ruffin,* for the prisoner.

SMITH, C. J. (After stating the case.) Several exceptions

are taken to the charge of the court, but only one of them, to which the foregoing confessions apply, will be considered.

The ninth instruction given to the jury is in these words: "There is no evidence in this cause that the deceased, George Goode, Elijah Knight and Joseph Nelson were banded together at Mrs. Crutchfield's for the purpose of taking the life of the prisoner at the bar." This instruction we understand to refer to the prisoner's account of the transaction as given to the witness, Clark, and to exclude it from the consideration of the jury in determining the facts of the homicide, for the reason that a conspiracy alleged to exist on the road near George Young's is no evidence of any conspiracy at Mrs. Crutchfield's house, where the deceased received his mortal wounds. A strict and literal interpretation of the prisoner's words would seem to warrant and sustain the charge. But in fairness to the prisoner, we do not think his language ought to be thus restricted. It is manifest he refers to the time and place where the fatal shot was fired, and professes to describe the transaction itself, and to give his reasons for taking the life of the deceased. The confessions are drawn from the witness for this purpose only. Moreover, the prisoner said to the other witness that he did the act in self-defence. However slight the evidence may be, when confronting the concurring testimony of the witnesses who were present and saw what was done, the judge had no right to withdraw it from the jury and to tell them there was no evidence of the conspiracy and waylaying as stated by the prisoner. It was the exclusive province of the jury to consider and give such weight to the prisoner's self-excusatory account of the transaction as in their judgment it was entitled to in making up their verdict; for his declaration is some evidence of the truth of the fact declared.

"When there is a defect or entire absence of evidence," says PEARSON, J., in State v. Allen, 3 Jones, 257, which was

a case of murder, "it is his duty so to instruct the jury;" but if there be any competent evidence relevant and tending to prove the matter in issue, "it is the true office and province of the jury" to pass upon it; although the evidence may be so slight that any one will exclaim, "certainly no. jury will find the fact upon such insufficient evidence!" See also the cases *Wells* v. *Clements*, 3 Jones, 168, and *Wittkowsky* v. *Wasson*, 71 N. C., 451.

For the reasons given the prisoner is entitled to have his case passed on by another jury. There is error and a *venire de novo* is awarded.

PER CURIAM.                         *Venire de novo.*