STATE *v.* JENKINS.

### STATE v. SHERMAN JENKINS.

(Filed 6 June, 1928.)

**1. Arrest—On Criminal Charge—Right of Officer to Use Force to Prevent Escape.**

An officer of the law may use such force as may appear to him to be reasonably necessary in preventing the escape of one whom he has lawfully arrested, extending to the use of firearms after being attacked by the prisoner with a stick, a deadly weapon.

**2. Same—Questions for Jury.**

When supported by the evidence the question is for the jury as to whether an officer has used such force as appeared to him reasonably necessary to prevent an escape, or has used such excessive force as to make the use of a pistol a crime under the circumstances.

**3. Same.**

The extent of the force used by an officer to prevent an escape after arrest does not depend upon the degree of the criminal charge against the one arrested.

**4. Intoxicating Liquor—Searches and Seizures—When Search Warrant Necessary.**

A search warrant is not necessary to search a suitcase for intoxicating liquor when carried by the defendant after arrest, when under the circumstances the officer had reasonable grounds for belief that it contained intoxicating liquor, and these conditions do not fall within the intent of section 6, chap. 1, Public Laws 1923.

APPEAL by defendant from *Deal, J.,* at March Term, 1928, of GRAHAM. New trial.

The necessary facts will be stated in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*R. L. Phillips for defendant.*

CLARKSON, J.  The defendant was convicted of assault and battery with a deadly weapon upon one Luther Spivey, and from the judgment upon such conviction appealed to this Court.

Luther Spivey was indicted in one bill of indictment for an assault with a deadly weapon on Sherman Jenkins, and Sherman Jenkins was indicted in another bill for assault with deadly weapon on Luther Spivey.  By agreement the cases were tried together.

The following seems to be a fair statement of the case as made out by the State.  Sherman Jenkins was deputy sheriff of Graham County, and had been such for about four years.  Luther Spivey testified himself that he knew Sherman Jenkins.  The defendant, Sherman Jenkins, offered to prove by one I. N. Wilson, that he, Wilson, told him, Sherman Jenkins, that Luther Spivey was bringing in liquor and selling it, and if he would watch him he could catch him; that he had been getting some himself.  On the early evening of 15 September, 1927, he met Luther Spivey coming up the highway about 75 yards from his house.  The lights of the car were right on Spivey, who had in his hand a suitcase apparently full of liquor, and he had a walking stick in the other hand.  Jenkins was accompanied by a witness, Wence Orr.  On seeing Spivey with this suitcase, he halted him and told him he was under arrest, and that he would have to see what he had in the grip.  Spivey knew him and he had, on the outside of his coat, his badge as deputy sheriff.  Spivey told him that he could not search the grip without a warrant; thereupon he sent Orr after a warrant.  When Spivey started walking up the road the defendant, Jenkins, walked in front of him.  Thereupon Spivey stepped off the banks into the woods and went down the mountain and undertook to go up the river.  Jenkins told Spivey that he had taken that suitcase as far as he was going to, and he went to take hold of it, having his pistol in his hand at the time.  Spivey struck him with a stick about the size of a round of a chair, and thereupon Jenkins shot at him.  One of the shots took effect in the hip of Spivey.  Spivey contradicted this evidence of Jenkins as to the time when he was shot in the hip and claimed that he did not strike Jenkins at the time that he was shot, but later on when he had gone about a quarter of a mile.  According to Jenkins' testimony, Spivey, in the fight, dropped the suitcase which he thought had in it liquor.  Near a branch right where Spivey entered the brush toward the river, a suitcase was found.  It had four half-gallon cans of whiskey in it and four big apples.  This was testified to also by Bob Jenkins, the magistrate, and Wence Orr.  Spivey

denied that this suitcase was his, and claimed that he had nothing in the suitcase that he was carrying except clothes. It appears that Spivey was carrying a suitcase loaded with liquor for the purpose of sale.

Without treating consecutively the exceptions of the defendant's counsel on this appeal, there can be no doubt, we think, under the decisions of this Court, that the defendant, Jenkins, had authority to arrest Spivey when he met him coming along the road with a suitcase loaded as this suitcase was, particularly when his attention had been directed to Spivey specifically as a man who was selling liquor in the camp, and if he would watch out for him he would find him transporting it or selling it. *All he need show is satisfactory reasons for his belief that Spivey was in his presence breaking the law by transporting spirituous liquors.* *Neal v. Joyner,* 89 N. C., 287.

In *S. v. McAfee,* 107 N. C., at p. 816, it is said: "If the assault with the stick described was committed in the presence of the officer, Severs, and he was known to the defendant to be a justice of the peace, it was not unlawful to arrest without informing the offender of the nature of the charge, as well as without warrant. 3 Whart. Cr. L., sec. 2829. We concur with the judge below in the view expressed in his charge that, if the defendant struck his wife with the stick described by the witness at a point so near to the officer that he could distinctly hear what was said and the sound made by the blow, it would be considered in law a breach of the peace in his presence, though he could not at the time actually see the former, because it was too dark. *S. v. Hunter,* 8 Lawyers' Reports, 530, and notes." *Neal v. Joyner, supra; S. v. McNinch,* 90 N. C., 695; *Martin v. Houck,* 141 N. C., 317; *Brewer v. Wynne,* 163 N. C., 322; *S. v. Fowler,* 172 N. C., 910; *S. v. Blackwelder,* 182 N. C., 899; *S. v. Campbell,* 182 N. C., at p. 914.

The defendant, Jenkins, had arrested Spivey, and Spivey was then in his custody. When Spivey told him that he could not search his suitcase without a search warrant, he had a right to hold Spivey until the search warrant came. It is necessary to remember that Spivey was under arrest.

In *S. v. Dunning,* 177 N. C., 559, at p. 562, *Hoke, J.,* says: "It is a principle very generally accepted that an officer, having the right to arrest an offender, may use such force as is necessary to effect his purpose, and to a great extent he is made the judge of the degree of force that may be properly exerted. Called on to deal with violators of the law, and not infrequently to act in the presence of conditions importing serious menace, his conduct in such circumstances is not to be harshly judged, and if he is withstood, his authority and purpose being made known, he may use the force necessary to overcome resistance and to the extent of taking life if that is required for the proper and efficient

performance of his duty. It is when excessive force has been used maliciously or to such a degree as amounts to a wanton abuse of authority that criminal liability will be imputed. The same rule prevails when an officer has a prisoner under lawful arrest and the latter makes forcible effort to free himself; and, in this jurisdiction, the position holds whether the offense charged be a felony or a misdemeanor, the governing principle being based on the unwarranted resistance to lawful authority and not dependent, therefore, on the grade of the offense. These views are in accord with numerous decisions of our Court in which the questions presented were directly considered—as in *S. v. Sigman,* 106 N. C., 728; *S. v. McMahan,* 103 N. C., 379; *S. v. Pugh,* 101 N. C., 737; *S. v. McNinch,* 90 N. C., 695; *S. v. Garrett,* 60 N. C., 144; *S. v. Stallcup,* 24 N. C., 50."

The limits of the authority of an officer to use a deadly weapon to stop a fleeing prisoner are also set out: *S. v. Simmons,* 192 N. C., 692; *Holloway v. Moser,* 193 N. C., 185.

According to Jenkins' own testimony, he did not fire upon Spivey until he (Spivey) had made an attack upon him with a deadly weapon. He was entitled to have the question submitted to the jury (1) upon his good faith—*S. v. McNinch,* 90 N. C., 695; (2) whether he used force more than necessary to the proper performance of his duty—*S. v. Garrett,* 60 N. C., 144; *S. v. Sigman,* 106 N. C., 728; (3) whether he shot in self-defense—*S. v. Allen,* 48 N. C., 257; *S. v. McKinsey,* 80 N. C., 458; *S. v. Garrett, supra.* In this last named case it is said: "The warrant must be executed peaceably if you can, forcibly if you must."

We do not think the proviso to section 6, chapter 1, Public Laws 1923, applicable here. Section 6, in reference to transporting intoxicating liquor, says: "*In any wagon, buggy, automobile, water or air craft or other vehicle.*" A suitcase carried in one's hand along a public highway would not be an "other vehicle" within the meaning of the statute. The proviso then, "that nothing in this section shall be construed to authorize any officer to search any automobile or other vehicle or baggage of any person without a search warrant, duly issued, except where the officer sees or has absolute personal knowledge that there is intoxicating liquor in such vehicle or baggage" has no application to the situation presented upon this appeal. The "baggage" of the proviso, refers to baggage accompanying or in the vehicle transporting the intoxicating liquor. If it should be considered otherwise it would totally disregard the controlling context of section 6. See *S. v. Godette,* 188 N. C., p. 497. The facts in this case are entirely different from those cases in which officers, upon mere suspicion and without knowledge, assaulted innocent persons. *S. v. Simmons, supra; S. v. DeHerrodora,* 192 N. C., 749.

Black's Law Dictionary, 2d ed., p. 112, defines *Baggage:* "In the law of carriers. This term comprises *such articles of personal convenience or necessity as are usually carried by passengers for their personal use,* and not merchandise or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such *as a sale and the like.* The term includes whatever the passenger takes with him *for his personal use or convenience according to the habits or wants of the particular class to which he belongs,* with reference to the immediate necessities or ultimate purpose of the journey," citing numerous authorities. (Italics ours.)

"By 'baggage' is understood such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not merchandise or other valuables, though carried in the trunk of a passenger, but which are not, however, designed for such use, but for other purposes, such as sale and the like. Articles consisting of a sample liquor cooler, one beer faucet, one wrench, and one lemon squeezer, which were samples carried by a passenger in his trunk for the purpose of effecting sales do not constitute baggage." *Texas, etc., R. Co. v. Capps,* 2 Willson Civ. Cas. Ct. App., sec. 33. See *Winder v. Penniman,* 181 N. C., 7.

Bob Jenkins, a justice of the peace, testified: "We found this suitcase or traveling bag where Jenkins said Spivey jumped off; it had four one-half gallon cans of whiskey in it, about one-half pint was gone from one." The defendant testified: "The suitcase which Spivey was carrying was the kind that is usually used by bootleggers for carrying liquor."

It could hardly be said, by strained construction of the statute, that a "suitcase or traveling bag" with four one-half gallon cans of contraband liquor in it was *baggage,* under the definition of baggage as above defined.

Among the many assignments of error, the defendant excepted and assigned error to the following portion of the charge of the court below: "However, I have been compelled to instruct you as a matter of law under the evidence, that the defendant, Jenkins, did not have a right to make an arrest under the circumstances shown in this case." We think this was error, for the reasons given. It may not be amiss to say that the able, learned and frank Assistant Attorney-General, Mr. Nash, concedes there was error in the charge of the court below. There must be a

New trial.