STATE v. JOHN C. MOBLEY.

(Filed 9 July, 1954.)

**1. Arrest § 3—**

A person has the right to resist an unlawful arrest by the use of force, as in self-defense.

**2. Same—**

A person resisting an unlawful arrest may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty, and where he uses excessive force, he may be guilty of assault, or, if death ensues, even of homicide.

**3. Arrest § 1b—**

Under the general common law rule, an arrest may not be made ordinarily without a warrant, and the exceptions to this common law rule are defined and limited entirely by statute in this State.

**4. Same—**

An arrest without warrant except as authorized by statute is illegal in this State.

**5. Same—**

A peace officer may make an arrest without a warrant if he has reasonable ground to believe that a felony has been committed or a dangerous wound inflicted, and that the suspect is guilty and will escape unless immediately arrested, G.S. 15-41. Under this rule it is not required that the offense be committed in the presence of the peace officer or in fact that the offense should have been actually committed if the arresting officer has reasonable ground to believe that it has been committed.

**6. Arrest § 1a—**

Where a felony actually has been committed in the presence of a private citizen, such private citizen may forthwith arrest without warrant the per-

son he knows to be guilty or the person he has reasonable ground to believe guilty. If it turns out the offense is not a felony, such private person may not justify taking the suspect into custody. G.S. 15-40.

**7. Arrest § 1a, 1b—**

A peace officer or a private citizen on equal terms may arrest without warrant a person whose conduct in his presence amounts to a breach of the peace, or a threat of breach of the peace together with some overt act in attempted execution of the threat such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent. G.S. 15-39.

**8. Same—**

The test of the right of a peace officer or private citizen to arrest without warrant under G.S. 15-39 is not whether the offense be a misdemeanor, but whether arrest is necessary to prevent or suppress a breach of the peace. The statute does not justify arrest when the facts furnish reasonable ground to believe an offense covered by the statute is being committed, but the person making the arrest must determine, at his peril, preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed. *S. v. McNinch,* 90 N.C. 695, overruled on this point.

**9. Same—**

Mere drunkenness unaccompanied by language or conduct which creates, or is reasonably calculated to create, public excitement or disorder amounting to a breach of the peace, will not justify arrest without warrant under G.S. 15-39.

**10. Arrest § 3—**

The State's evidence tended to show that defendant resisted arrest without warrant by a municipal police officer on a charge of public drunkenness under G.S. 14-335. The municipal charter conferred no power on its police officers to arrest without warrant in misdemeanor cases. *Held:* In the absence of evidence tending to show *prima facie* that defendant's conduct at the time amounted to an actual or threatened breach of the peace, the arrest was illegal, and defendant's motion to nonsuit on the charge of resisting arrest should have been allowed.

**11. Same—**

Where the State's evidence fails to show that defendant used excessive force in resisting an illegal arrest, defendant's motion to nonsuit on the charge of assaulting the police officer should have been allowed.

**12. Arrest §§ 1a, 1b—**

A nuisance is not *per se* a breach of the peace, and neither a police officer nor a private citizen may arrest a person without warrant for creating a nuisance which does not amount to a breach or threatened breach of the peace.

**13. Appeal and Error § 51b—**

The doctrine of *stare decisis* does not apply where it conflicts with a pertinent statutory provision to the contrary.

**14. Same—**

> The doctrine of *stare decisis* should never be applied to perpetuate palpable error.

BARNHILL, C. J., concurs in result.
PARKER, J., dissenting.
DENNY, J., concurring.

APPEAL by defendant from *Rousseau, J.,* and a jury, at October Term, 1953, of GASTON.

Criminal prosecution tried on appeal from the Recorder's Court of the Town of Dallas upon warrants, consolidated for trial, charging the defendant with (1) public drunkenness, (2) resisting arrest, and (3) simple assault.

Police officers of the Town of Dallas arrested the defendant without warrant for public drunkenness. The defendant, asserting he was not drunk, resisted the arrest. Chief Eidson testified that as he and officer Broome drove up to Brewer's Service Station he observed the defendant "wobbling across the driveway. . . . He was drunk. . . . I got out of the car and . . . told him he was under arrest for being drunk. I took hold of his left arm. Mr. Broome got his right arm. We started to the car. He scuffled on around behind the car and . . . hauled off and hit me beside the head and knocked my hat off, and my glasses flew out of my pocket. He started toward Mr. Broome and . . . swung at him and hit him a glancing lick. . . ." The defendant testified, as did a number of bystanders, that he was not intoxicated.

The jury returned a verdict of not guilty of public drunkenness, but guilty of resisting arrest and guilty of simple assault.

From judgment pronounced, imposing penal servitude of.nine months, the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*R. Gregg Cherry, Ernest R. Warren, and Charles E. Hamilton, Jr., for defendant, appellant.*

JOHNSON, J. The offense of resisting arrest, both at common law and under the statute, G.S. 14-223, presupposes a lawful arrest. It is axiomatic that every person has the right to resist an unlawful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense. *S. v. Beal,* 170.N.C. 764, 87 S.E. 416; *S. v. Allen,* 166 N.C. 265, 80 S.E. 1075; *S. v. Belk,* 76 N.C. 10; *S. v. Bryant,* 65 N.C. 327; *S. v. Kirby,* 24

N.C. 201; *S. v. Curtis,* 2 N.C. 471; 4 Am. Jur., Arrest, Sec. 92; 6 C.J.S., Arrest, Sec. 13, p. 613. See also 28 Va. Law Review, p. 330.

True, the right of a person to use force in resisting an illegal arrest is not unlimited. He may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty. *S. v. Allen, supra.* See also *S. v. Glenn,* 198 N.C. 79, 150 S.E. 663. And where excessive force is exerted, the person seeking to avoid arrest may be convicted of assault, or even of homicide if death ensues (4 Am. Jur., Arrest, Sec. 92), but in no event may a conviction of the offense of resisting arrest be predicated upon resistance of an unlawful arrest. *S. v. Allen, supra; S. v. Belk, supra;* Prosser on Torts, p. 165.

This brings us to the pivotal question presented by this appeal: Was the arrest of the defendant lawful or unlawful? Necessarily, the answer is dependent on whether the officers had the right to arrest the defendant without a warrant.

It has always been the general rule of the common law that ordinarily an arrest should not be made without warrant and that, subject to well-defined exceptions, an arrest without warrant is deemed unlawful. 4 Bl. Com. 289 *et seq.;* 6 C.J.S., Arrest, Sec. 5, p. 579; 5 C.J., p. 395. This foundation principle of the common law, designed and intended to protect the people against the abuses of arbitrary arrests, is of ancient origin. It derives from assurances of Magna Carta and harmonizes with the spirit of our constitutional precepts that the people should be secure in their persons. Nevertheless, to this general rule that no man should be taken into custody of the law without the sanction of a warrant or other judicial authority, the processes of the early English common law, in deference to the requirements of public security, worked out a number of exceptions. These exceptions related in the main to cases involving felonies and suspected felonies and to breaches of the peace. 4 Bl. Com. 292 *et seq.;* Archbold's Criminal P. and P., 29th Edition, p. 1013 *et seq.;* 4 Am. Jur., Arrest, Sections 22 to 38. Arrest without warrant in felony cases was justified at common law on the theory that dangerous criminals and persons charged with heinous offenses should be incarcerated with all possible haste in the interest of public safety. Whereas, the necessity for prompt on-the-spot action in suppressing and preventing disturbances of the public peace was the factor which justified arrest without warrant in misdemeanor cases involving breaches of the peace. In such cases, with the moving consideration being the immediate preservation of the public peace, rather than the due apprehension of the offender, the theory prevailed that unless the public peace was menaced, the delay incident to obtaining a warrant from a judicial officer would not prejudice the interests of the State in punishing the offender. See *Carroll v. United States,*

267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790. See also 75 University of Pennsylvania Law Review, 485.

It is not necessary for us to deal at length with the refinements of the common law exceptions to the general rule against arrest without warrant. This is so for the reason that in this State the common law exceptions have been enacted or supplanted by statute, so that the power of arrest without warrant is now defined and limited entirely by legislative enactments. And the rule is that where the right and power of arrest without warrant is regulated by statute, an arrest without warrant except as authorized by statute is illegal. *Sims v. Smith,* 115 Conn. 279, 161 A. 239; *S. v. Bradshaw,* 53 Mont. 96, 161 P. 710; *S. v. De Hart* (N. J. C. Pl.), 129 A. 427; *Mazzolini v. Gifford,* 90 Vt. 352, 98 A. 904; 6 C.J.S., Arrest, Sec. 5, pp. 579 and 580. See also *Stearns v. Titus,* 193 N.Y. 272, 85 N.E. 1077; *Vinson v. Commonwealth,* 219 Ky. 482, 293 S.W. 984; *Fitzpatrick v. Commonwealth,* 210 Ky. 385, 275 S.W. 819.

Our General Assembly of 1868-69 enacted a comprehensive, all-embracing set of rules prescribing and limiting the power of arrest without warrant. This Act, which may well be called our Code of Arrest Without Warrant, is Chapter 178, Subchapter 1, Session Laws of 1868-69. Its caption reads as follows: "When and by whom arrests may be made without process." This statute clarifies, in some particulars modifies, and in other ways extends the pre-existing rules of the common law governing arrest without warrant, but in the main the Act is declaratory of the common law. The statute has been preserved and brought forward through successive codifications of our statute law. It is now codified in pertinent parts as G.S. 15-39, 15-40, 15-41, 15-43, 15-44, 15-45, and 15-46.

The basic rules governing arrest without warrant as precribed by the Act of 1869 may be distinguished as they relate to (1) felonies and to (2) misdemeanors. We discuss them in that order:

1. *Felonies.*—G.S. 15-41 (Subchapter 1, Section 3 of the Act of 1869) confers on peace officers the right to make arrests without process when the officer has "reasonable ground to believe" (1) a felony has been committed or a "dangerous wound" inflicted, (2) that a particular person is guilty, and (3) that such person may escape if not immediately arrested. Under this statute the significant features are that the felony or dangerous wound need not necessarily be committed or inflicted in the presence of the officer. Indeed, in order to justify the arrest it is not essential that any such serious offense be shown to have been actually committed. It is only necessary that the officer have reasonable ground to believe such offense has been committed. Moreover, in the instances enumerated an arresting officer is protected by the statute against the consequences of an erroneous arrest based on mistaken identity of the offender; all that is required is that the officer have reasonable ground to believe he is after

the right person and that the suspect will escape unless immediately arrested.

G.S. 15-40 (Subchapter 1, Section 6 of the Act of 1869) authorizes private persons to make arrests in certain felony cases. By the terms of this statute, when a felony actually has been committed in the presence of a private person, he may forthwith arrest without warrant (1) the person he knows to be guilty, or (2) the person he has reasonable ground to believe to be guilty. It is noted that this statute confers on a private citizen the right of arrest only when a felony is actually committed in his presence. Thus, if it turns out that the supposed offense is not a felony, then the arresting private citizen may not under the terms of the statute justify taking the suspect into custody. However, if a felony actually has been committed·in his presence, then the private person making the arrest has the protective benefits of the statute if he arrests either (1) the guilty person or (2) the person he has reasonable ground to believe is guilty of the offense, although perchance the person arrested may be innocent.

2. *Misdemeanors.*—G.S. 15-39 (Subchapter 1, Section 1 of the Act of 1869) deals with breaches of the peace. This statute confers on peace officers and private persons, on equal terms, the power of arrest without warrant in certain misdemeanor cases. The statute follows in the main the pre-existing principles of the common law. The language of the statute is as follows: "Every person present at any riot, rout, affray or other breach of the peace, shall endeavor to suppress and prevent the same, and, if necessary for that purpose, shall arrest the offenders." It is significant to note that the statute—as did the rules of the common law it supplanted—confers no power of arrest without warrant in misdemeanor cases, as such. The power of arrest without warrant is referable entirely to the question of breach of the peace. The test is not whether the offense is a misdemeanor, but, rather, whether an arrest is necessary in order to "suppress and prevent" a breach of the peace. The fact that an offense arrestable under this statute as a breach of the peace is also a misdemeanor, is purely coincidental. See *Alexander v. Lindsey,* 230 N.C. 663, 55 S.E. 2d 470.

This brings us to an analysis of the intent and meaning of G.S. 15-39. Its language is plain and clear. An arrest without warrant may be made under the provisions of this statute by anyone when it is necessary to "suppress and prevent" a breach of the peace. This means that either a peace officer or a private person may arrest anyone who in his presence is (1) actually committing or (2) threatening to commit a breach of the peace. To justify an arrest on the ground of necessity in order to "suppress" a breach of the peace, the conduct of the person arrested must amount to an actual breach of the peace in the presence of the person

making the arrest. Whereas, to justify an arrest in order to "prevent" a breach of the peace, ordinarily there must be at least a threat of a breach of the peace, together with some overt act in attempted execution of the threat. However, we think a breach of the peace is threatened within the meaning of the statute if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent. *Quinn v. Heisel,* 40 Mich. 576. See also *Martin v. State,* 89 Ala. 115, 8 So. 23, 18 Am. St. Rep. 91; *Com. v. Gorman,* 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977; 4 Am. Jur., Arrest, Sec. 26.

In testing the legality of an arrest without warrant by the provisions of G.S. 15-39, it must be kept in mind that not every misdemeanor is a breach of the peace. As to what constitutes a breach of the peace within the meaning of the rules which authorize an arrest without warrant in such cases, the better reasoned authorities emphasize the essentiality of showing as an element of the offense a disturbance of public order and tranquillity by act or conduct not merely amounting to unlawfulness but tending also to create public tumult and incite others to break the peace. We find this succinct statement in 4 Am. Jur., Arrest, Sec. 30:

"Generally speaking, any violation of public order or disturbance of the public tranquillity by any act or conduct tending to provoke or incite others to violence constitutes a breach of the peace, within the meaning of the rules which authorize an arrest without a warrant for a breach of the peace. . . .

"A breach of the peace may be occasioned by an affray or assault, by the use of profane and abusive language by one person toward another on a public street and in the presence of others, or by a person needlessly shouting and making a loud noise."

The Restatement of Torts, Section 116, puts it this way: "A breach of the peace is a public offense done by violence or one causing or likely to cause an immediate disturbance of public order." See also Prosser on Torts, p. 160; Ballentine's Law Dictionary, p. 171; 22 Michigan Law Review, 541, 573.

In applying the statute at hand, G.S. 15-39, it is manifest that mere drunkenness unaccompanied by language or conduct which creates, or is reasonably calculated to create, public excitement and disorder amounting to a breach of the peace, will not justify arrest without warrant under the statute. See *Yarbrough v. Commonwealth,* 219 Ky. 319, 292 S.W. 806; *S. v. Munger,* 43 Wyo. 404, 4 P. 2d 1094; *King v. State,* 132 Tex. Cr. R. 200, 103 S.W. 2d 754; *Crow v. State,* 152 Tex. Cr. R. 586, 216 S.W. 2d 201; 8 Am. Jur., Breach of Peace, Sections 6 to 10; 11 C.J.S., Breach of the Peace, Sections 1 to 6.

It is to be kept in mind that G.S. 15-39 contains no provisions, comparable to those in G.S. 15-41 dealing with felony cases, which justify, arrest when the facts furnish reasonable ground to believe an offense covered by the statute is being committed. Therefore, a person making an arrest under the authority of G.S. 15-39 must determine, at his peril, preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed. *S. v. Hunter,* 106 N.C. 796, 11 S.E. 366; *S. v. McAfee,* 107 N.C. 812, 12 S.E. 435; *S. v. Rollins,* 113 N.C. 722, 18 S.E. 394. See also *McKenna v. Whipple,* 97 Conn. 695, 118 A. 40; *People v. Ward,* 226 Mich. 45, 196 N.W. 971; *Fitzpatrick v. Commonwealth, supra* (210 Ky. 385, 275 S.W. 819, headnote 27); *Edgin v. Talley,* 169 Ark. 662, 276 S.W. 591, 42 A.L.R. 1194; 6 C.J.S., Arrest, Sec. 5, p. 580.

The State, urging that a peace officer may arrest without warrant either when (1) a misdemeanor is actually committed in his presence or (2) when he has reasonable cause to believe a misdemeanor is being committed in his presence, cites some twenty or more cases from other jurisdictions, principally those listed in the footnotes supporting one of the diverse views given in the text statement appearing in 6 C.J.S., Arrest, Sec. 6, p. 595. All the cited cases have been examined. They are distinguishable. In the light of the plain meaning of G.S. 15-39, none of the cited cases is considered authoritative or controlling with us. The cases fall generally into four classifications: (1) decisions controlled by statutes which expressly confer on peace officers broader powers of arrest in misdemeanor cases than are conferred by either the common law or our statute (G.S. 15-39); (2) decisions not controlled by statutes but which, nevertheless, are based on cases controlled by statutes conferring broader powers of arrest in misdemeanor cases than are conferred by either the common law or our statute; (3) decisions based upon the erroneous premise that under the common law any offense, felony or misdemeanor, committed in the presence of a peace officer is arrestable without warrant; and (4) decisions based on an erroneous declaration of the common law, as set out in the third classification, and which also embrace the further erroneous concept that under the common law an arrest without warrant may be justified in any case where the officer has probable cause or reasonable ground to believe a misdemeanor is being committed in his presence. Some of the cited decisions are premised on an erroneous interpretation of *Carroll v. United States, supra* (267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790), as being authority for the proposition that a peace officer may arrest generally for any misdemeanor committed in his presence. Whereas, the decision in the *Carroll case,* opinion by *Mr. Chief Justice Taft,* is susceptible of no such meaning; it rests squarely on the provisions of the National Prohibition Act, which expressly authorizes summary seizure and arrest

whenever any person is found transporting intoxicating liquors in any vehicle in violation of law. For a clear analysis of the opinion in the *Carroll case,* and criticisms of subsequent cases based on the erroneous interpretation of this decision, see 75 University of Pennsylvania Law Review, 485 *et seq.*

While the Act of 1868-69, which supplanted the common law rules of arrest without warrant, remains unchanged in basic principles and as now codified in its various parts—G.S. 15-39 through 15-46—furnishes the fundamental rules governing arrest without warrant in this State, nevertheless, since the original enactment of this code of arrest without warrant, the Legislature has seen fit from time to time to extend the power of arrest without warrant to cover numerous specific situations and types of cases, some of State-wide application, others of local nature.

Chief among the local implementing statutes are numerous municipal charter provisions which confer on peace officers authority to arrest on sight without process any person found violating any municipal ordinance, or in some instances committing any misdemeanor, regardless of whether the offense does or does not amount to a breach of the peace. See Coates, Law of Arrest in North Carolina, 15 N. C. Law Review, 101, where numerous examples of such charter provisions are cited. See also *Alexander v. Lindsey, supra.*

It is also noted that a number of implementing State-wide statutes have been enacted from time to time conferring on peace officers the power of arrest without warrant in cases not amounting to a breach of the peace. For example, G.S. 20-183 confers on law enforcement officers power to stop any motor vehicle for the purpose of determining whether it is being operated in violation of any provision of the Motor Vehicle Act, and empowers such officers "to arrest on sight" any person found violating any provision of the Act. Also, when a peace officer discovers a person in the act of transporting intoxicating liquor in any vehicle in violation of law, G.S. 18-6 makes it the officer's duty to seize the liquor, take possession of the vehicle, and arrest the person in charge thereof. G.S. 113-91 (d) confers on game protectors the power to arrest on the spot for violations of game laws committed in their presence. Forest wardens are given similar powers under G.S. 113-49 with respect to violations of the forestry laws. For a list of other North Carolina statutes giving power of arrest without warrant in misdemeanor cases not amounting to a breach of peace, see Machen, Law of Arrest (publication of the Institute of Government, University of North Carolina, 1950), p. 46.

We have examined the charter of the Town of Dallas, Chapter 351, Private Laws of 1913. It nowhere purports to confer on the police officers of the town authority to make arrests in misdemeanor cases without warrants in cases not amounting to a breach of the peace. Indeed, no

special statute implementing the Act of 1868-69 covering the case at hand has been called to our attention, and our research discloses none. Nor does it appear that the defendant was tried for public drunkenness under a town ordinance. Rather, he was charged with public drunkenness under G.S. 14-335. Therefore, upon the record as presented the legality or illegality of the arrest in the instant case must be tested by the terms of the Act of 1868-69, and more particularly by the section thereof now codified as G.S. 15-39.

In the case at hand the evidence on which the State relies fails to show *prima facie* that the defendant's conduct at the time of the arrest amounted either to an actual or threatened breach of the peace within the intent and meaning of G.S. 15-39. Hence, the arrest must be treated as illegal. This being so, the State failed to make out a *prima facie* case of resisting arrest.

Nor does the evidence in any aspect show that the defendant used excessive force in resisting the illegal arrest. Therefore, the defendant's motion for judgment as of nonsuit, both as to the charge of resisting arrest and assault, should have been allowed, and it is so ordered. The judgment below will be vacated and reversed and the motion for nonsuit sustained.

We have not overlooked the decision of this Court in *S. v. Freeman,* 86 N.C. 683, cited and relied on by the State, wherein peace officers were held justified in making an arrest without warrant for public drunkenness in their presence. The person arrested was found between the hours of ten and eleven o'clock at night lying helplessly intoxicated upon the sidewalk exposed to public view at a place much frequented in the town of Hendersonville, in violation of a town ordinance making such helpless state of intoxication a nuisance and punishable by fine or imprisonment. The arrest was upheld by the Court, not upon the theory that the prosecutor's condition of drunkenness amounted to a breach of the peace, but rather upon the express ground that such drunkenness was an offense "against decency and morality" amounting to a nuisance and therefore arrestable on sight without warrant. It is apparent that the Court in so deciding *S. v. Freeman* was not advertent to the provisions of Chapter 178, Subchapter 1, Session Laws of 1868-69, and its salutary impact on the law of arrest in this State. This statute is nowhere mentioned in the opinion. Instead, the Court in holding that nuisance, as distinguished from breach of the peace, is sufficient to justify arrest without warrant, cites Archbold's Criminal P. and P., *page 26, note 2. This is a standard English treatise on criminal law and procedure, first published in 1822. It has since appeared in numerous editions, the last one available to us being the 29th Edition, published in 1934. It was the 6th Edition published in 1853, with American notes by Waterman, that was available to the Court when *S. v. Freeman* was decided in 1882. The Archbold text

clearly states the common law rule to the effect that in nonfelony cases arrest without warrant is justified only in breach of peace cases. The support for the novel proposition that nuisance not amounting to breach of the peace is arrestable without warrant is found in the cited footnote 2, *page 26. An examination of this footnote discloses that it in turn is based solely on the authority of "Swan's Jus. p. 474." Further investigation discloses that Swan's is a manual type of work relating to powers and duties of justices of the peace and constables in Ohio, with forms, the 3rd Edition of which was published in 1841. It is significant that the next edition of Archbold available to us, the 8th Edition, with American notes by the eminent legal scholar J. N. Pomeroy, nowhere refers to the proposition stated in the cited Waterman note. In fact, Pomeroy does not bring forward any part of the Waterman note 2 found on *page 26 of the 6th Edition. It is manifest that the 8th Edition of this work, though published in 1880, was not available to the Court when *S. v. Freeman* was decided (in 1882). At any rate, nowhere among the authorities presently available to us, including subsequent editions of Archbold, have we found authoritative support for the proposition that, in the absence of special statutory enactment, a nuisance not amounting to a breach of the peace is arrestable without warrant. And it is manifest that an offense amounting to a nuisance is not *per se* a breach of the peace. 66 C.J.S., Nuisance, Sec. 9. Accordingly, we are constrained to hold that the decision in *S. v. Freeman,* being repugnant to established common law rules of arrest and also in direct contravention of the provisions of the Act of 1869, and particularly the portion thereof now codified as G.S. 15-39, is overruled. And we withdraw and treat as unauthoritative the subsequent pronouncements of this Court, whether they be—as in most instances they are—*obiter dicta,* or—as in a few instances—decisive of decided cases, to the effect that, in the absence of statute, a nuisance or other misdemeanor not amounting to a breach of the peace is arrestable without warrant. See *S. v. Pillow,* 234 N.C. 146, 66 S.E. 2d 657; *Perry v. Hurdle,* 229 N.C. 216, 49 S.E. 2d 400; *S. v. Loftin,* 186 N.C. 205, 119 S.E. 209; *S. v. Rogers,* 166 N.C. 388, 81 S.E. 999; *Sossamon v. Cruse,* 133 N.C. 470, 45 S.E. 757; *S. v. McAfee, supra* (107 N.C. 812); *S. v. Hunter, supra* (106 N.C. 796).

Similarly, we treat as unauthoritative the decision in *S. v. McNinch,* 90 N.C. 695, which contains this statement to which the State directs our attention: *"In making an arrest upon personal observation and without warrant, the officer will be excused when no offense has been perpetrated, if the circumstances are such as reasonably warrants the belief that it was* (*Neal v. Joyner,* 89 N.C. 287) *and the jury must judge of the reasonableness of the grounds upon which the officer acted."* (Italics added.) In making this pronouncement the Court inadvertently failed to note that

*Neal v. Joyner,* 89 N.C. 287, on which the decision is expressly rested, was a felony case controlled by another part of the Act of 1869—now G.S. 15-41—which clearly authorized arrest on reasonable ground of belief; whereas, in *S. v. McNinch* the Court was dealing with an alleged misdemeanor wherein the officer's power of arrest derived from the so-called "breach of peace" portion of the Act of 1869—now G.S. 15-39—which justifies arrest without warrant only when it is necessary to "suppress or prevent" a breach of the peace. *Alexander v. Lindsey, supra* (230 N.C. 663). Thus, it is manifest that the pronouncement contained in the foregoing italicized excerpt from *S. v. McNinch* is an erroneous application in a misdemeanor case of a rule applicable only in felony and "dangerous wound" cases. The pronouncement is disapproved and withdrawn, as are similar statements based on like facts in subsequent decisions of the Court. See *S. v. Jenkins,* 195 N.C. 747, 143 S.E. 538; *S. v. Campbell,* 182 N.C. 911, 110 S.E. 86; *Sigmon v. Shell,* 165 N.C. 582, 81 S.E. 739.

Where there are conflicting decisions the doctrine of *stare decisis* has no application. *Patterson v. McCormick,* 177 N.C. 448, 457, 99 S.E. 401. Nor should *stare decisis* be applied where it conflicts with a pertinent statutory provision to the contrary. 21 C.J.S., Courts, Sec. 187, p. 304. Moreover, where a statute covering the subject matter has been overlooked, the doctrine of *stare decisis* does not apply. 15 C.J. 958. Nor may the court by a line of erroneous decisions overrule a statutory enactment. *Patterson v. McCormick, supra,* at p. 457. Besides, the doctrine of *stare decisis* should never be applied to perpetuate palpable error. 21 C.J.S., Courts, Sections 187 and 193.

It is to be kept in mind that the decision in this case is no attempt to provide a code for arrest without warrant, nor do we attempt to close the hiatuses in present arrest procedure. Such matters are not within the province of the Court. Our intent here is to eliminate or minimize the conflicts that have developed in the construction and application of present statutes, to the end that peace officers may know with reasonable exactitude their rights and duties in respect to making arrests without warrant.

In the situation thus presented it is for the Legislature, rather than the Court, to determine whether it has or has not kept pace with the exigencies of the times in its process of conferring on various peace officers from time to time by piecemeal enactments broadened powers of arrest without warrant. In short, since this branch of the law has come to be prescribed and regulated wholly by statute, it is for the Legislature to ponder and decide whether the present statutes meet the minimum requirements of public safety and security, or whether further extensions are necessary; for example, by the enactment of a single State-wide statute authorizing

any peace officer to arrest without warrant (1) when a misdemeanor or other criminal offense is committed in his presence, or (2) when he has reasonable ground to believe that the person to be arrested has committed a criminal offense and will evade arrest if not immediately taken into custody, with further enactment requiring that the minimum bond of $1,000 now required of peace officers by G.S. 128-9 be substantially increased. See *Langley v. Patrick,* 238 N.C. 250, 77 S.E. 2d 656.

For constructive criticisms of the present law of arrest see Machen, The Law of Arrest, p. 76 *et seq.;* 15 N. C. Law Review, p. 101, 103 *et seq.;* 29 Michigan Law Review, pp. 452 and 453; 28 Virginia Law Review, pp. 331, 332, and 343 *et seq.* See also 22 Michigan Law Review, p. 541; 49 Harvard Law Review, p. 566.

The judgment below is
Reversed.

BARNHILL, C. J., concurs in result.

PARKER, J., dissenting. The State's evidence tends to show the following facts. Jess Broome, a police officer of the Town of Dallas dressed in his uniform with badge and pistol, saw the defendant around 9:30 or 10 p.m. at the Dallas Grill, a public restaurant. The defendant was staggering around drunk, and cursed Broome and the brother of the Chief of Police of Dallas, who was talking to Broome. Broome asked the defendant to hush cursing. The defendant replied if Broome got out of his car, he, the defendant, would cut his head off, and for Broome "to call the County"—manifestly referring to the County Law Enforcement Officers. Broome did not arrest the defendant then, but "called the County" for help. Broome then went to the courthouse, called the Dallas Chief of Police A. R. Eidson, went to Eidson's home, picked him up, came back up town, and found the defendant at a service station, a public place. Chief Eidson had on a white shirt and was in civilian clothes, but had his badge on his shirt and a gun. The officers had no warrant. The officers got out of the car, and Chief Eidson told the defendant he was under arrest for being drunk. Chief Eidson took hold of his left arm, Broome his right arm, and started to the car. The defendant scuffled around behind the car, and struck Chief Eidson on the head knocking his hat off. He struck at Chief Eidson "a whole lot." Broome hit the defendant a glancing blow on the head with a blackjack. The defendant told Chief Eidson to shoot him. (John Puett, a witness for the defendant, testified the defendant raised his shirt, and said to Chief Eidson "You yellow bellied s.o.b., let's see you put a slug in it.") The officers then seized the defendant, put him in their car and carried him to the county jail. The "scuffle or pulling" between the officers and the defendant lasted about

15 or 20 minutes. Upon arrival at the jail the defendant cursed one of the officers there, and later tried to fight another officer there.

The defendant, and one of his witnesses, testified that Chief Eidson told the defendant he was arresting him for being drunk and disorderly. The defendant testified on cross-examination that one time he went before the Town Board to try to make Jess Broome pay him a debt, and that he had talked to three members of the Board about firing Chief Eidson. The defendant further admitted on cross-examination that he had served a prison sentence for assault with a deadly weapon with intent to kill; had been convicted of speeding and reckless driving; of violating the prohibition law; of carrying a concealed weapon; and probably convicted of an affray. The defendant testified that he knew Chief Eidson was a police officer of the Town of Dallas when he was arrested.

Whether cursing a police officer or addressing scurrilous words to him constitute a breach of the peace for which an arrest may be made without a warrant depends upon the circumstances involved. Mere impudence will not suffice. Anno. 34 A.L.R. 566; *S. v. Moore,* 166 N.C. 371, 81 S.E. 693; 4 Am. Jur. Arrest sec. 31; 8 Am. Jur. Breach of Peace sec. 10.

The State's evidence shows that the defendant cursed Broome in the presence of others, while Broome was sitting in his car on a public street in the Town of Dallas, threatened immediate force to Broome's person if he got out of his car, and then and there cursed Eidson, brother of the town's Chief of Police. It is common knowledge such conduct on a public street in the presence of others provokes and incites to immediate violence. If that evidence is accepted as true by the jury, it shows with apodeictic certainty, according to the authorities cited in the majority opinion, that the defendant committed a breach of the peace in Broome's actual presence, for which offense it was Broome's duty to arrest the defendant promptly without a warrant. G. S. N. C. 15-39. A policeman has the same authority to make arrests within the town limits as is vested by law in a sheriff. G. S. N. C. 160-21.

Did Broome's delay in arresting the defendant make the arrest illegal? In my opinion, the answer is No, considering the evidence in the light most favorable to the State, as is requisite on a motion for nonsuit.

It is said in 4 Am. Jur., Arrest, sec. 67: "In making an arrest without a warrant for breach of the peace or a misdemeanor, an officer must act promptly at the time of the offense***In order to justify a delay, there should be a continued attempt on the part of the officer or person apprehending the offender to make the arrest; he cannot delay for any purpose which is foreign to the accomplishment of the arrest. If an officer sees an affray and calls other officers to his assistance, the fact that the actual arrest is made after the affray is over does not make the arrest without a warrant illegal.***The shortness of the interval does not

really determine whether the right to make the arrest without a warrant exists, but the delay merely throws light on the question whether the arrest was made as soon as the circumstances permitted.***A delay of half an hour in order to procure help in making the arrest may be reasonable, while a delay of two hours may be unreasonable, especially if the officer meanwhile is doing nothing connected with the arrest." See also 6 C. J. S., Arrest, p. 590.

In *S. v. McClure*, 166 N.C. 321, 81 S.E. 458, it is written: "***it is the right of a peace officer to arrest, without warrant, one who assaults him (citing authorities), and the officer did not lose the right in this case because the prisoner had walked off, according to the evidence of one witness, 30 or 40 feet, and to that of another, 50 or 75 yards."

It is a fair inference from the evidence that Broome knew the defendant had hard feelings against him. The defendant's admissions of his criminal record, on cross-examination, did not enlarge Broome's authority, and would not justify an illegal arrest. *Larson v. Feeney,* 196 Mich. 1, 162 N.W. 275, L.R.A. 1917D 694. However, such admissions permit the reasonable inference that Broome knew the defendant was a man of violence. If Broome had attempted immediately to arrest the defendant for the breach of peace committed in his presence, he would have been "rightfully the aggressor." *S. v. Miller,* 197 N.C. 445, 149 S.E. 590. It seems to me most probable, in the light of what happened when the arrest was made, if Broome without aid had made the arrest then and there, he would have had to injure the defendant seriously with gun or blackjack to overcome his resistance. It is also probable that under such circumstances Broome would not have succeeded in making the arrest. The State's evidence tends to show that Broome's delay was due solely to his seeking the aid of an officer, and that he did not in any way desist from that purpose before the arrest. The defendant's conduct was not that of a pacific drunk. Such conduct required summary action on Broome's part, and had not passed when the arrest was made. The offense and the arrest form part of one transaction. The State's evidence does not show how long Broome was gone in his search for aid, but it would not seem to have been over ten or fifteen or twenty minutes at the most. I think the delay was reasonable, and showed sound judgment on Broome's part.

The defendant knew that Chief Eidson and Broome were police officers of the Town of Dallas. The fact that Chief Eidson, and not Broome, told the defendant he was under arrest is immaterial. In reality Broome, with Eidson's aid, made the arrest. Though Eidson said, according to the State's evidence, he was arresting the defendant for being drunk—the defendant testified Eidson said he was arresting him for being drunk and disorderly—that does not erase the defendant's breach of the peace, if the

State's evidence is believed. *State v. Young,* 40 Wyo. 508, 281 P. 17. For an offense committed in his actual presence, an officer is not required to state the cause of the arrest, since the accused is presumed to know the cause of which he is arrested. The authority of a private person to make an arrest is more limited than that of an officer. *Graham v. State,* 143 Ga. 440, 85 S.E. 328, Anno. Cas. 1917A 595; *State v. Evans,* 161 Mo. 95, 61 S.W. 590, 84 Am. St. Rep. 669; *State v. Young, supra;* Annos. 42 L.R.A. 673; L.R.A. 1918D, p. 980; 84 Am. St. Rep. 679.

"If the official authority of an officer is known to the person who is being arrested, it is not essential that he announce it or make known his intention or purpose before actually apprehending the offender." 4 Am. Jur., Arrest, Sec. 65.

To resist an officer in the lawful discharge of his duties is made a crime at common law and in all jurisdictions by statute. 39 Am. Jur., Obstructing Justice, Sec. 8; 67 C. J. S., Obstructing Justice, Sec. 5. In Edmund Burke's words "obedience to law is what makes government."

In my opinion the trial court correctly overruled the motions for non-suit, and I so vote.

I think there are prejudicial errors in the charge for which a new trial should be awarded.

The defendant assigns as error that the Court several times in its charge said the officers would be justified in making the arrest if in the officer's own judgment and opinion the defendant was guilty, when the Court should have charged that it was for the jury to say whether or not the officer had reasonable grounds to warrant the arrest. The defendant supports his argument by what this Court said in *S. v. McNinch,* 90 N.C. 695: "In making an arrest upon personal observation and without warrant, the officer will be excused when no offense has been perpetrated, if the circumstances are such as reasonably warrant the belief that it was (*Neal v. Joyner,* 89 N.C. 287), and the jury must judge of the reasonableness of the grounds upon which the officer acted." The majority opinion says this "pronouncement is disapproved and withdrawn, as are similar statements based on like facts in subsequent decisions of the Court. See *S. v. Jenkins,* 195 N.C. 747, 143 S.E. 538; *S. v. Campbell,* 182 N.C. 911, 110 S.E. 86; *Sigmon v. Shell,* 165 N.C. 582, 81 S.E. 739." To the disapproval of this statement of law, firmly embodied in our decisions, I do not agree.

The majority opinion states: "We think a breach of the peace is threatened within the meaning of the statute (G.S.N.C. 15-39) if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent," citing authorities from other jurisdictions. In my opinion that is a restatement, only slightly

rephrased, of the criticised statement in *S. v. McNinch,* with this vital omission that the *McNinch case* rightfully requires "that the jury must judge of the reasonableness of the grounds upon which the officer acted."

The majority opinion also says: "to justify an arrest on the ground of necessity in order to 'suppress' a breach of the peace, the conduct of the party arrested must amount to an actual breach of the peace in the presence of the officer making the arrest"; and also states: "a person making an arrest under the authority of G.S. 15-39 must determine, at his peril, preliminary to proceeding without warrant, whether an offense arrestable under the statute is being committed," (citing in support of the last quoted excerpt *S. v. Hunter,* 106 N.C. 796, 11 S.E. 366; *S. v. McAfee,* 107 N.C. 812, 12 S.E. 435; *S. v. Rollins,* 113 N.C. 722, 18 S.E. 394; and cases from other jurisdictions.)

To say that an officer making an arrest without a warrant under the provisions of G.S.N.C. 15-39 for a breach of the peace being committed in his presence must determine at his peril before making an arrest that a breach of the peace is actually being committed, and to say that if a breach of the peace is threatened, he can act upon probable cause is to my mind an unsound distinction. Such a distinction would in one case make the officer an insurer that an offense had been committed, and in another permit him to act upon probable cause.

The excerpt quoted above from *S. v. McNinch, supra,* is sound law, is followed by us in later decisions, and is apparently supported by the majority of courts elsewhere "dealing with the exact question."

In *Peru v. U. S.,* 4 Fed. (2d) 881, it is said: "A mere suspicion is not sufficient upon which to base an arrest for a misdemeanor without a warrant. *U. S. v. Slusser* (D.C.), 270 F. 818. In *Garske v. U. S.,* 1 F. (2d) 620, 625, we said: 'the proper test, supported by the great weight of authority, by which the case should be decided is, were the circumstances presented to the officers through the testimony of their senses sufficient to justify them in a good faith belief that plaintiff in error was in their presence transporting liquor in violation of law***? In other words, was there probable cause for them to so believe, or were the facts sufficient to give rise merely to a suspicion thereof? If the former, the arrest was legal*** If the latter, the arrest was illegal.***" It is true that this case involved the National Prohibition Law, which expressly authorizes summary arrest when any person is found transporting liquor in violation of the act. But it is also true that G.S.N.C. 15-39 expressly authorizes summary arrest for a breach of the peace committed in the officer's presence. See also *Carroll v. U. S.,* 267 U.S. 132, 69 L. Ed. 543, 39 A.L.R. 790 (opinion by *Taft, C. J.*).

This decision is criticised in 75 Penn. Law Review 485 *et seq.* as follows: "It is difficult to see how the *Carroll case* can be taken as authority

for the proposition that an arrest can be made by a peace officer without warrant for a misdemeanor less than a breach of the peace. Yet the case has been taken to stand for that proposition by some Federal Courts and as so understood has been followed and is cited in *dicta* where the issue was as to the officer's presence." The article in the Penn. Law Review does not criticise this language in the *Carroll case:* "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the seizing officer***the search and seizure are valid."

An article entitled "Arrest without Warrant" in the Wisconsin Law Review (1939) pp. 385, 387 says: "Some jurisdictions hold that the officer must actually know an offense is being committed and would hold him liable in such circumstances. The majority of jurisdictions, however, hold that it is not essential that the officer arresting without a warrant absolutely know that an offense is being committed in his presence, and rule that a *bona fide* belief on his part that it is being committed is enough."

In my opinion the fact that some of the courts were construing statutes which authorize peace officers to arrest without a warrant for all misdemeanors committed in their presence, and in *S. v. McNinch, supra,* we were interpreting a statute restricted to riots, routs, affrays or other breach of the peace makes no difference. The rationale of the decisions is identical.

I think that these words in *S. v. Hunter, supra,* (quoted in *S. v. McAfee, supra,* and referred to in *S. v. Rollins, supra*): "but policemen of Asheville must determine, at their peril, preliminary to proceeding without warrant, whether a valid ordinance has been violated within or out of their view," is in direct conflict with what we had previously said in *S. v. McNinch, supra,* and what we have repeatedly said later in *Perry v. Hurdle,* 229 N.C. 216, 49 S.E. 2d 400; *Wilson v. Mooresville,* 222 N.C. 283, 22 S.E. 2d 907; *S. v. Jenkins,* 195 N.C. 747, 143 S.E. 538; *S. v. Campbell,* 182 N.C. 911, 110 S.E. 86; *Sigmon v. Shell,* 165 N.C. 582, 81 S.E. 739; *Brewer v. Wynne,* 163 N.C. 319, 79 S.E. 629. Further it seems to be in conflict with the majority of courts elsewhere, which have passed on "the exact question." In my opinion it is not correct law, and I vote to overrule such statement in the *Hunter Case.*

Unless our peace officers in arresting without a warrant under G.S.N.C. 15-39 can act upon reasonable grounds or probable cause, as set forth in *S. v. McNinch, supra,* and subsequent decisions of this Court, a crippling blow will be inflicted upon law enforcement in this State. If officers, who in lawfully making arrests are "rightfully the aggressors," are not given reasonable protection in the discharge of their duties, society cannot

expect or receive fearless and efficient action from them. These decisions afford full protection to the rights of the individual. Men, women and children are also entitled to be summarily protected from the foul language, indecent sight and vile conduct of belligerent drunks upon the public streets and in the public places of our towns and cities, and this they cannot adequately receive if the arresting officer, before making the arrest, must determine at his peril, whether an offense arrestable under the statute is being committed.

For prejudicial errors in the charge I cast my vote for a new trial.

DENNY, J., concurring: While the majority opinion deals only with the facts as to what occurred at Brewer's Service Station, the previous conduct of the defendant at the Dallas Grill, in my opinion, did not justify Chief Eidson in arresting him without a warrant.

When all the evidence adduced in the trial below is considered, it clearly appears that bad blood existed between Broome and the defendant. The evidence most favorable to the State is Broome's testimony to the effect that he saw the defendant at the Dallas Grill; that "he was staggering around"; that the defendant cursed him and Arnold Eidson, a brother of the Chief of Police of the town of Dallas. The evidence also discloses that Arnold Eidson and officer Broome were in Broome's car at the time the purported cursing took place. There is in the record, however, no evidence tending to show that the defendant was loud and boisterous or that any person or persons other than Broome and Eidson heard anything he said. Moreover, the warrant upon which the defendant was tried, which was signed by Broome and Chief Eidson, as complainants, does not charge the defendant with disorderly conduct, but merely of appearing "in public under the influence of intoxicating liquor."

Furthermore, it is disclosed by the defendant's evidence and not denied by the State, that after the defendant left the Dallas Grill he went to Brewer's Service Station and was there "about 35 or 40 minutes" before the officers attempted to arrest him. And there is no evidence tending to show any misconduct on the part of the defendant while he was at the filling station prior to the arrival of the officers. I realize that neither the defendant's evidence nor the result of the trial on the charge of being drunk is controlling on the legal question presented for review, nevertheless it is significant that a number of the leading citizens of the town of Dallas talked with the defendant while he was at the filling station and were there when he was arrested, and these citizens testified unequivocally in the trial below that the defendant was not drunk at the time of his arrest. The jury believed them and found the defendant not guilty of the charge.

---

R. R. *v.* R. R.

---

The law is clear that an officer is not authorized to arrest a citizen even for a breach of the peace not committed in his presence. *Alexander v. Lindsey,* 230 N.C. 663, 55 S.E. 2d 470. The warrant upon which the defendant was convicted charged him with resisting an officer, "to-wit: A. R. Eidson (not Broome), in the performance of his duties as such officer," etc. The State offered no evidence tending to show that the defendant did anything in the presence of Chief Eidson that would justify his arrest without a warrant. Therefore, the State, in my opinion, has not shown facts that would justify the arrest of the defendant by Chief Eidson for alleged misconduct that occurred at least 35 or 40 minutes before he arrested him, and which alleged misconduct neither took place in his presence nor on the premises of the service station where he was arrested.

If it be conceded that the facts as related by Broome are true (which were vigorously denied by the defendant), in view of the personal animosity that existed between Broome and the defendant, I have considerable doubt as to whether the conversation or controversy between Broome and the defendant which occurred at the Dallas Grill, constituted a breach of the peace. G.S. 15-39; and the authorities cited on this point in the majority opinion. Hence, I think that on the record before us, the majority opinion has construed the law aright.