STATE OF NORTH CAROLINA v. TED LANE SAMPLEY

No. 82SC655

(Filed 1 February 1983)

**1. Criminal Law § 91.4— denial of continuance to obtain counsel**

The denial of defendant's motion for a continuance made at the time of trial did not deprive defendant of his constitutional right to effective assistance of counsel of his choice where defendant's original counsel was permitted to withdraw from the case; the court continued the cases against defendant twice to allow defendant to obtain new counsel; defendant had over a month from the withdrawal of his original attorney in which to retain a new one; defendant did not seek a further continuance until the expiration date of the second of these continuances; on that date defendant informed the court that he would represent himself, and the record does not reveal a formal motion for further continuance until the precise moment set earlier on that date for commencement of the trial; the attorney desired by defendant had only commenced the private practice of law on that date; and the State was prepared for trial on that date, and its witnesses, including several individuals with significant responsibilities elsewhere in the court system and law enforcement, were present to testify.

**2. Arrest and Bail § 6.2— right to resist arrest—instruction not required**

The trial court properly declined to rule as a matter of law and to instruct the jury that defendant's arrest was unlawful and he thus had a right to use reasonable force to resist it where the uncontroverted evidence showed that defendant was not placed under arrest until he had assaulted a deputy sheriff by swinging his elbow at him; that this assault occurred while the deputy was discharging or attempting to discharge a duty of his office by responding, in his capacity as courtroom bailiff, to instructions from the presiding judge to preserve order and keep the peace, and defendant's arrest therefore was lawful under G.S. 14-33(b)(4); and that the force which defendant applied from that point forward was in resistance to a lawful arrest and could not be excused as necessary to prevent the unlawful restraint of his liberty.

APPEAL by defendant from *Davis, Judge.* Judgments entered 4 March 1982 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 11 January 1983.

Defendant was convicted of misdemeanor assault on an officer, resisting arrest, and two counts of simple assault. The court suspended sentence and placed defendant on supervised probation on the simple assault and resisting arrest charges. It sentenced him to imprisonment for not less nor more than two years, sixty days thereof to be active and the balance to be served on supervised probation, on the assault on an officer charge.

From these judgments, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Kaye R. Webb, for the State.*

*Bruce H. Jackson, Jr., and W. G. Smith, for defendant appellant.*

WHICHARD, Judge.

[1] Defendant contends denial of his motion for continuance deprived him of his constitutional right to effective assistance of counsel of his choice. The pertinent facts are as follows:

Defendant was tried on or about 1 March 1982 on warrants issued 8 June 1981. A previous trial, in October 1981, had resulted in mistrial.

Defendant's counsel at that trial had moved, on 26 January 1982, to be allowed to withdraw on the ground that defendant had, contrary to his request and advice, published in a newspaper an open letter to the District Attorney regarding calendaring of his cases. By order of 2 February 1982, the court allowed the motion.

The court thereafter entered two continuance orders for the purpose of enabling defendant to obtain new counsel. The first, upon motion by the State, continued the cases from 1 February 1982 through 17 February 1982. The second, upon motion by defendant appearing *pro se*, and further motion by the State, continued them through 1 March 1982.

On 1 March 1982 defendant appeared and advised the court that he did not have an attorney. He further stated that the attorney he had "talked to" was in the process of leaving Legal Services and was "not available until after 1 March."

Upon inquiry by the court, the State advised that it planned to try the cases as the first jury trial. The court thereupon advised defendant that it "[saw] nothing in the file . . . to indicate . . . that the case . . . should be continued." The court stated further: "The case is almost a year old. . . . It appears that you do not have an attorney. . . . But the case is set for trial, and I would suggest, that if you want an attorney to represent you, that you get one quickly."

Defendant, upon request, was allowed to speak, and stated: "I will represent myself. I am neither feeble, ignorant or illiterate." Defendant reiterated that the attorney he had chosen was unavailable, and the court in turn advised defendant that many others in the county were available. Defendant indicated that he had approached other attorneys who requested fees he could not afford, and that he could handle the fees of the attorney who was then unavailable.

The court then indicated that the cases would be tried at 2:00 p.m. that day. It again informed defendant that he could represent himself if he wished, but that there were many attorneys available if he wanted one to represent him.

At 2:00 p.m. the attorney whom defendant had indicated he wished to employ appeared and made oral motion for continuance, which the court denied. The court also denied a written motion for continuance which this attorney filed at 5:05 p.m. on the same date. At that time the State had presented evidence from five of its eight witnesses. The court found, in denying the motion, that since the mistrial the case had been continued on at least three occasions at the request of defendant; that the attorney had filed no motion prior to the date set for trial and had only commenced the private practice of law on that date; and that to continue the case at that point "would create a hardship and inconvenience for the State" in that the witnesses for the State included a Superior Court judge, a court reporter who was assigned to court in another county, a magistrate, and some police officers.

> [A] motion to continue is ordinarily addressed to the trial judge's sound discretion and his ruling thereon will not be disturbed except upon a showing that he abused that discretion. [Citations omitted.] However, when a motion to continue is based on a constitutional right, the question presented is a reviewable question of law.

*State v. McFadden*, 292 N.C. 609, 611, 234 S.E. 2d 742, 744 (1977). *See also State v. Maher*, 305 N.C. 544, 547, 290 S.E. 2d 694, 696 (1982). "[T]he right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 77 L.Ed. 158, 162, 53 S.Ct. 55, 58 (1932). However, "[t]he right of the accused to select his own counsel cannot be insisted upon in a manner that will

obstruct an orderly procedure in the courts and deprive the courts of their inherent power to control the same." *State v. Montgomery*, 33 N.C. App. 693, 696-97, 236 S.E. 2d 390, 392, *appeal dismissed*, 293 N.C. 256, 237 S.E. 2d 258 (1977).

Under the circumstances here denial of defendant's motion for continuance, made at trial time, did not deprive him of his constitutional right to effective assistance of counsel of his choice. Subsequent to withdrawal of defendant's original counsel, the court continued the cases twice to allow defendant to obtain new counsel. Defendant, as a result, had over a month from the withdrawal of his original attorney in which to retain a new one. Until the expiration date of the second of these continuances, defendant did not seek a further continuance. On that date he informed the court that he would represent himself, and the record does not reveal a formal motion for further continuance until the precise moment set earlier on that date for commencement of trial. At that time the State was prepared for trial; and its witnesses, including several individuals with significant responsibilities elsewhere in the court system and law enforcement, were present to testify. The granting of a further continuance under these circumstances would have "obstruct[ed] . . . orderly procedure in the courts." *Montgomery, supra.* Further, given the time which the previous continuances had allotted to defendant for retention of counsel, granting the motion was not essential to afford defendant "a fair opportunity to secure counsel of his own choice." *Powell, supra.*

Defendant argues that *State v. McFadden, supra,* and *State v. Maher, supra,* while concededly based on facts different from those in his cases, nevertheless establish "the law . . . dispositive of the issue here." *McFadden* held that a defendant was denied effective assistance of counsel of his choice when his retained counsel was engaged in a trial in federal court, and the trial court denied continuance and required trial by a junior associate of said retained counsel, which associate had only practiced law for eighteen months, had only tried one previous jury case, and had only learned about defendant's case on the morning of trial. *Maher* held that defendant was denied effective assistance of counsel of his choice when his original counsel withdrew four days prior to trial, his newly retained counsel was at that time involved in a federal court trial, and the court, upon being advised by the new-

ly retained counsel on the date of trial that he was totally unprepared to offer defendant effective assistance of counsel, gave counsel only fifteen minutes to confer with defendant before proceeding to trial. The circumstances of those cases thus were significantly different from those here, and we do not find the cases controlling. This assignment of error is overruled.

[2] Defendant contends the court should have found as a matter of law, and should have charged the jury, that since his arrest was not lawful he had a right to use reasonable force to resist it. "It is axiomatic that every person has the right to resist an unlawful arrest." *State v. Mobley*, 240 N.C. 476, 478, 83 S.E. 2d 100, 102 (1954). One so resisting, however, "may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty." *Id.* at 479, 83 S.E. 2d at 102.

The pertinent evidence for the State tended to show the following:

Defendant had been a witness in Superior Court in a criminal case against his stepfather for communicating threats to defendant. Judge Rouse had directed a verdict of not guilty. Defendant had then risen and said, "Your honor, I am a reasonable man." Judge Rouse thereupon told the deputy sheriff serving as courtroom bailiff to arrest defendant if he said anything else.

Defendant left the courtroom; and shortly thereafter his stepfather entered it and told Judge Rouse, "Your honor, that man is going to kill me." Judge Rouse instructed the bailiff to "go outside and see if you cannot keep peace," or words to that effect.

As the bailiff proceeded down the aisle toward the courtroom door, defendant entered the courtroom. The bailiff took him by the elbow, pointed him toward the door, and said, "Ted, let's talk outside." As they exited the courtroom, defendant "jerked his arm away" and said, "Let go of my [expletive deleted] arm." He then "came back towards [the bailiff's] face," and the bailiff "ducked to miss [his] elbow."

When they were outside the courtroom the bailiff told defendant he was under arrest and placed a handcuff on one of defendant's wrists. Defendant thereupon kicked the bailiff in the groin. Two police officers came from the courtroom to assist the bailiff, and defendant commenced flailing and kicking violently.

Defendant kicked the two police officers and the bailiff during the general melee which ensued.

Defendant testified that as he entered the courtroom the bailiff approached him, grabbed him by the arm, spun him around and "headed" him in the direction of the door. Upon reaching the door he tried to pull his arm free, and the bailiff increased his force and propelled him through the door. He could not recall what happened outside the door. He did recall struggling, and admitted he could have hit or kicked the officers. He did not recall the bailiff telling him he was under arrest for assault, but acknowledged that "[o]utside the door [the bailiff] could have possibly said that."

The uncontroverted evidence thus established that defendant was not placed under arrest until he had assaulted a deputy sheriff by swinging his elbow at him. When that assault occurred, then, no arrest had taken place; and defendant thus could not have been entitled to use force against the officer for the purpose of resisting an unlawful arrest.

The evidence also established that defendant did assault a deputy sheriff by swinging his elbow at him, either offensively or in trying to free himself; and that this assault occurred while the deputy sheriff was discharging or attempting to discharge a duty of his office, *viz.*, responding, in his capacity as courtroom bailiff, to instructions from the presiding judge to preserve order and keep the peace. This conduct by defendant violated G.S. 14-33(b)(4), and his arrest therefor was thus lawful and proper.

The force which defendant applied from that point forward was therefore in resistance to a lawful arrest, and it could not be excused as "necessary to prevent the unlawful restraint of his liberty." *Mobley, supra.* The court thus properly declined to rule as a matter of law that defendant had the right to use reasonable force to resist the arrest. It also properly declined to give the requested instruction to that effect, because the evidence did not support it. *State v. Bailey,* 254 N.C. 380, 386, 119 S.E. 2d 165, 170 (1961).

No error.

Judges ARNOLD and HILL concur.